[L.A. No. 30464. June 4, 1976.]

CULLIGAN WATER CONDITIONING OF BELLFLOWER, INC.,
Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

88

**COUNSEL**

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Appellant.

J. Kimball Walker for Plaintiff and Respondent.

Brookes, Brookes & Vogl, Valentine Brookes and Lawrence V. Brookes as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**SULLIVAN, J.**—Defendant State Board of Equalization (Board) appeals from a judgment granting plaintiff Culligan Water Conditioning of Bellflower, Inc. recovery of certain use taxes paid under protest.

The case was tried by the court, sitting without a jury, upon an agreed statement of facts. In substance the pertinent facts are as follows: Plaintiff is in the business of conditioning water at the point of use. Hard water contains calcium and magnesium, and these "hardness" ions cause it to be unsuitable in the home for doing the laundry or for washing and bathing. Plaintiff "softens" the water by removing "hardness" ions. This is accomplished at the point of use, in the home, by passing the water supply through a conditioning unit containing an ion-exchange material

which exchanges its more soluble sodium ions for the calcium and magnesium ions. After the ion-exchanger is spent, the unit is regenerated.

Plaintiff's residential business consists of two separate categories: (1) The sale or lease of "home-owned" automatic units; and (2) the furnishing of "exchange units" under a water conditioning contract. The "home-owned unit" is a softener complete within itself which continuously regenerates the ion-exchange material within the unit and regularly provides soft water once inserted in the customer's plumbing system. In connection with the sale or lease of this unit, plaintiff pays a sales tax and secures sales tax reimbursement from its customers. Such taxes are not in issue in the instant case.

It is the furnishing of the "exchange unit" under the water conditioning contract which is at the heart of the present controversy. This unit, once inserted in the customer's plumbing, also regularly provides soft water but unlike the "home-owned unit" cannot itself regenerate the ion-exchange material. Consequently this unit must be replaced periodically by plaintiff in order to provide soft water continuously. The householder contracts with plaintiff for water conditioning and does not purchase the installed equipment. Under its arrangement with the customer, plaintiff agrees to provide the exchange unit, to connect it to the customer's water system and to periodically replace the ion-exchange material in the unit in order to maintain a continuous flow of softened water. The customer pays an initial charge for the necessary alterations to the plumbing system and a monthly or bi-monthly charge for the water conditioning depending upon the quantity of water and the degree of the hardness of the water. Plaintiff regularly removes the exchange material when exhausted, replaces it with new or regenerated material and regenerates the exhausted material at its plant. At all times, plaintiff retains ownership of, and full control over, the unit.[1]

Prior to 1966 plaintiff operated in a prescribed franchise area in and about the City of Bellflower, California. About May 1, 1966, plaintiff acquired the assets of a Culligan franchise business known as Culligan of South Gate, Inc. Among the assets purchased were 2,000 portable

---

[1] A specimen of plaintiff's water conditioning contract is attached to, and made a part of, the agreed statement of facts. It is entitled "Culligan Annual Service Subscription" and contains provisions generally reflecting the arrangement described above. Plaintiff also advertises and bills its customers as a water conditioning service.

exchange units. Since plaintiff paid no sales tax reimbursement upon the acquisition of these units, the tax auditor for the Board determined that the 2,000 units were acquired by plaintiff "ex-tax." Accordingly, the tax auditor determined that the service income from the equivalent number of service customers should be included in the measure of taxable sales as "taxable rentals." The Board therefore assessed a tax delinquency of $12,816.17, with accrued interest of $2,347.86, or a total assessment of $15,164.03, for the audit period from April 1, 1966, to December 31, 1968. Plaintiff paid this assessment under protest and filed a timely claim for refund on the ground that the income derived from the lease of these 2,000 units was income from a service business rather than from the rental of property and thus not subject to sales and use tax liability. The Board rejected the claim for refund and plaintiff filed the instant action.

Plaintiff acquired the 2,000 portable exchange units from its transferor (Culligan of South Gate) under a contract of sale whereby such transferor agreed to pay any sales tax due. Plaintiff paid no sales tax reimbursement on this transfer of the 2,000 units, but Culligan of South Gate had paid sales tax reimbursement on them at the time that South Gate had originally acquired the units and prior to the sale to plaintiff by South Gate. Plaintiff had paid sales tax reimbursement on all *other* portable exchange units at the time plaintiff originally acquired them and accordingly was not required to charge sales tax to its customers in connection with the units other than the 2,000.

The Board took the position that section 6006, subdivision (g), of the Revenue and Taxation Code[2] applied to the transactions involving the above-mentioned 2,000 exchange units and therefore assessed the tax as being due on a "lease of tangible personal property" in its audit for the period April 1, 1966, through December 31, 1968.[3] Attached to the agreed statement of facts and made a part thereof is a declaration of

---

[2]Hereafter, unless otherwise indicated, all section references are to the Revenue and Taxation Code.

[3]Section 6006 as it read at the time of the tax period covered by the assessment, provided in pertinent part as follows:
" 'Sale' means and includes:
".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .
"(g) Any lease of tangible personal property in any manner or by any means whatsoever, for a consideration, except a lease of:
".    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .
"(5) Tangible personal property leased in substantially the same form as acquired by the lessor or leased in substantially the same form as acquired by a transferor, as to which the lessor or transferor has paid sales tax reimbursement pursuant to Section 6052

Thomas P. Putnam, assistant chief counsel of the Board, who, the parties agreed, if called as a witness would testify to the statements made in the declaration, it being further agreed, however, that the relevance and probative value of his testimony and the Board's position concerning the lease "are issues in this case."

Mr. Putnam stated that the Board and its staff considered the type of transaction here involved pertaining to the portable exchange units "to be a 'lease' within the meaning of the Sales and Use Tax Law and, unless the property is leased in substantially the same form as acquired by the lessor and he has previously paid sales tax reimbursement or use tax measured by his purchase price, as a 'sale' and 'purchase' within the meaning of that law, subject to tax measured by the payments made by his customers . . . ." He explained that this type of transaction was considered to fall within the definition of "hiring" in Civil Code section 1925 and that the periodic payments made by the customer were considered to be the measure of tax by reason of section 6011. He concluded as follows: "By reason of the interworking of Sections 6009, 6201, 6203, 6390, and 6401, the basic tax on leases is considered to be a use tax on the lessee, which the lessor must collect. If the lessee is exempt, then the tax is considered imposed on the lessor as a sales tax and Sections 6051 and 6012 become applicable.

"Regulation 1660 (18 Cal. Admin. Code, § 1660), a copy of which is attached, describes the position of the Board with respect to leases of tangible personal property in general."

The trial court adopted by reference as its findings of fact the agreed statement of facts and concluded that the income upon which the Board's assessment was made "is service income and not a receipt from the lease of tangible personal property and as such is not taxable under

---

or has paid use tax measured by the purchase price of the property. For purposes hereof, transferor shall mean the following:

"(A) A person from whom the lessor acquired the property in a transaction described in subdivision (b) of Section 6006.5.

"(B) A decedent from whom the lessor acquired the property by will or the laws of succession."

Subdivision (g) was added to section 6006 in 1965. (See Stats. 1965, First Ex. Sess., ch. 2, § 2, p. 5444.)

At the same time section 6010, defining "purchase" was amended by identical language to include "any lease of tangible personal property." (See § 6010, subd. (e), added by Stats. 1965, First Ex. Sess., ch. 2, § 6, p. 5445; see also Cal. Admin. Code, tit. 18, § 1660.)

the Sales Tax Law," that the Board's position that the transaction in question constituted a lease of tangible personal property "is, on the facts of this case, an arbitrary, unreasonable and unwarranted extension of the interpretation of the words 'lease,' 'rental,' 'sale,' or 'purchase,' " and that plaintiff was entitled to a refund of the tax paid. Judgment was entered accordingly. This appeal followed.

■ ■ Initially, we must determine the appropriate standard of review applicable to the assessment against plaintiff of use tax liability based on the receipts derived from the lease of the exchange units. The Board contends that the assessment, grounded on what it denominates an administrative classification, may be overturned only if such classification was arbitrary, capricious or without rational basis. However, it is clear from the record that the basis of the assessment was not embodied in any formal regulation or even interpretative ruling covering the water conditioning industry as a whole and directed to the industry's use of exchange units (see § 7051 and Gov. Code, § 11420 et seq.), but rather that the basis of the assessment was nothing more than the Board auditor's interpretation of two existing regulations, that is, the regulation governing the lease of tangible personal property (Cal. Admin. Code, tit. 18, § 1660) and the regulation governing service businesses (Cal. Admin. Code, tit. 18, § 1501).

If the Board had promulgated a formal regulation determining the proper classification of receipts derived from the rental of exchange units to condition water and the regulation had been challenged in the action for refund of the tax paid (§ 6933), the proper scope of reviewing such regulation would be one of limited judicial review as urged by the Board. (*Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, 1020-1021 [106 Cal.Rptr. 867]; *Mission Pak Co.* v. *State Bd. of Equalization* (1972) 23 Cal.App.3d 120, 124-125 [100 Cal.Rptr. 69]; see *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 309-310 [118 Cal.Rptr. 473, 530 P.2d 161]; *Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 834-835 [27 Cal.Rptr. 19, 377 P.2d 83].) However, in the instant case the Board adopted no formal regulation of a general nature. Considering the particular facts of the transactions involved in the audit of plaintiff taxpayer and interpreting the statutes and regulations deemed applicable, the Board and its staff arrived at certain conclusions as to plaintiff's tax liability and assessed the tax accordingly. As we have set forth in the details of the record before us, the Board "took the position" that certain sections of the law and the regulations

applied and made its assessment in conformity with its view of the law. Thus the "position" taken by the Board with respect to plaintiff's exchange unit transaction was not the equivalent of a regulation or ruling of general application but, as the amicus points out to us and indeed as the very phraseology of the record indicates, was merely its litigating position in this particular matter.

In sum, our present task is to determine whether the Board in making the assessment in controversy has properly interpreted the relevant sections of the Sales and Use Tax Law and the Board's own relevant regulations adopted pursuant to such law. We recently summarized our proper function thusly: "The interpretation of a regulation, like the interpretation of a statute, is, of course, a question of law [citations], and while an administrative agency's interpretation of its own regulation obviously deserves great weight [citations], the ultimate resolution of such legal questions rests with the courts. [Citations.]" (*Carmona* v. *Division of Industrial Safety, supra,* 13 Cal.3d 303, 310; see also *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 917 [80 Cal.Rptr. 89, 458 P.2d 33]; *Szabo Food Service, Inc.* v. *State Bd. of Equalization* (1975) 46 Cal.App.3d 268, 271 [119 Cal.Rptr. 911]; *King* v. *State Bd. of Equalization* (1972) 22 Cal.App.3d 1006, 1012 [99 Cal.Rptr. 802].)[4] ■ Therefore, giving the appropriate weight to the Board's interpretation, we must decide whether the receipts from plaintiff's customers using the 2,000 exchange units are taxable rentals for leases of tangible personal property within the meaning of the applicable provisions of the Sales and Use Tax Law and regulations promulgated thereunder.

It will be helpful to our determination of this question to set forth at this point the respective positions of the parties. It is the position of the

[4]In both *Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization, supra,* 30 Cal.App.3d 1009, 1020-1021, and *Mission Pak Co.* v. *State Bd. of Equalization, supra,* 23 Cal.App.3d 120, 124-125, the taxpayer attacked the validity of a formal regulation promulgated by the Board and the Courts of Appeal properly held the applicable standard of review to be whether the regulation was arbitrary, capricious or had no reasonable or rational basis. However, in *Coast Elevator Co.* v. *State Bd. of Equalization* (1975) 44 Cal.App.3d 576, 586-587 [118 Cal.Rptr. 818], and *L.A.J., Inc.* v. *State Bd. of Equalization* (1974) 38 Cal.App.3d 549, 552 [113 Cal.Rptr. 319], it would appear that the taxpayer attacked the Board's interpretation of existing regulations, rather than the regulations themselves. Accordingly we disapprove any language in those opinions indicating that the proper scope of review of such litigating positions of the Board (announced either in tax bulletins or merely as the result of an individual audit) is to determine whether the Board's assessment was arbitrary, capricious or had no reasonable or rational basis. The proper scope of review in such cases is that enunciated in the text of this opinion.

Board that plaintiff's installation of the exchange units in its customers' residences under its water conditioning or service contract constitutes a lease of the exchange units. Plaintiff takes the position that such an arrangement does not constitute a lease since although having possession of the unit, the customer has neither use of it, nor dominion or control over it.[5] The Board rejoins that it is quite obvious that the customer *uses* the unit and by having control over the use of water in his house, simultaneously has dominion and control over the unit which softens it.

We start with the observation that if a lease of tangible personal property is a "sale" (§ 6006) and "purchase" (§ 6010) under the code and regulation (Cal. Admin. Code, tit. 18, § 1660), then the use of the leased property in this state by the lessee is subject to a use tax (§§ 6009, 6201) which the lessor must collect from the lessee at the time rentals are paid (§ 6203) and is measured by the rentals payable (§ 6012). "Any lease of tangible personal property in any manner whatsoever for a consideration is a 'sale' as defined in section 6006, and a 'purchase' as defined in 6010 . . . ." (Cal. Admin. Code, tit. 18, § 1660) except where sales or use tax is paid upon acquisition of the tangible personal property which is leased in substantially the same form as acquired. (See fn. 3, *ante.*)

Since upon acquiring the 2,000 exchange units here in question, plaintiff neither "paid sales tax reimbursement pursuant to Section 6052 [nor] . . . paid use tax measured by the purchase price of the property" (§ 6006, subd. (g)(5); see fn. 3, *ante*) any lease of the units by plaintiff in substantially the form acquired was subject to use tax collectable by plaintiff. Section 6006.3 provides: " 'Lease' includes rental, hire and license. . . ." Hiring is defined in Civil Code section 1925 as "a contract by which one gives to another the temporary possession and use of property, other than money, for reward, and the latter agrees to return the same to the former at a future time." As stated in *Entremont* v. *Whitsell* (1939) 13 Cal.2d 290, 295 [89 P.2d 392], "The chief characteristic of a renting or a leasing is the giving up of possession to the hirer, so that the hirer and not the owner uses and controls the rented property." (*Id.,* citing Civ. Code, § 1925.)

[5]Plaintiff points to the following portion of the agreed statement of facts: "The exchange unit is under the dominion control, and use of the plaintiff [Culligan] at all times and plaintiff has the full right and power over the unit; the customer is not permitted to tamper with, change, control, or use the exchange unit in any way for his own purposes. At any time at will and as needed, the plaintiff (dealer) exchanges one tank for another . . . . The customer does not have the right, interest, the desire or the physical or technical ability to alter, control, or make use of the unit in any way other than which is provided for him under his contract by the plaintiff."

Contrary to plaintiff's claim, we are satisfied that on the record before us, plaintiff's customer in a general but very practical sense has the use of the exchange unit which is installed in his plumbing system and has dominion and control over it while it is there. Certainly the customer *uses* the exchange unit by having the water pass along the lead-in pipes, through the conditioning unit, and thereafter throughout the entire water system of his residence. He also has dominion and control over the unit. He may permit it to remain inactive simply by not using the water in his house, as he might do during long absences during the day or over many days while away from home, or during long hours of nonuse during the night. Or he or members of his family may activate the unit and avail themselves of its functioning by the simple act of turning on a faucet. The fact that plaintiff has an *owner's* control of the unit and the exclusive right to replace one unit with another so as to regenerate the exhausted material at its plant, does not derogate in any way from the customer's right to use and control the unit while it is on his premises.

Thus, we conclude that there are present the requisite elements of a "hiring," namely the "temporary possession and use" of the exchange water conditioning unit for "reward" (Civ. Code, § 1925) as well as the requisite elements of a "lease," namely "the giving up of possession to the hirer" so that he "uses and controls the rented property." (*Entremont* v. *Whitsell, supra,* 13 Cal.2d 290, 295.) We therefore agree with the position of the Board and conclude that on the present record plaintiff's furnishing of the exchange units in controversy under the provisions of its so-called annual service subscription constituted a lease of tangible personal property.

Nevertheless, plaintiff insists that even if the elements of a lease of tangible personal property are present, it is nonetheless unreasonable for the Board to so classify plaintiff's business because it is more properly classified as a service business.[6] Plaintiff urges that it provides a water conditioning service consisting of the processing, regeneration and installation of the ion-exchange material which requires the skill and labor of its employees and that the water conditioning exchange unit is merely the vehicle by which such service is provided. Additionally, plaintiff points out that the water conditioning contract is called a service

---

[6]"Persons engaged in the business of rendering service are consumers, not retailers, of the tangible personal property which they use incidentally in rendering the service. Tax, accordingly, applies to the sale of property to them. . . ." (Cal. Admin. Code, tit. 18, § 1501.)

contract, the bill is labelled a service bill and the water softening industry has always advertised and considered itself as a service industry. Finally, plaintiff claims that its business is more like businesses that have been characterized as service businesses, such as swimming pool cleaners which use chemicals to clean the pool, exterminators which use electronic devices, and linen suppliers who launder the linen, than like businesses commonly thought of as leasing tangible personal property.

The Board has set forth its general standard for classifying transactions involving the transfer of tangible personal property as follows: "The basic distinction in determining whether a particular transaction involves a sale of tangible personal property or the transfer of tangible personal property incidental to the performance of a service is one of the true objects of the contract; that is, *is the real object sought by the buyer the service per se or the property produced by the service. . . .*" (Cal. Admin. Code, tit. 18, § 1501, italics added.) Service is defined as "performance of labor for the benefit of another." (Webster's New Internat. Dict. (2d ed., unabridged).) Essentially the crucial point of inquiry is whether the true object of the transaction is the finished article or the performance of labor. (*Albers* v. *State Board of Equalization* (1965) 237 Cal.App.2d 494, 497 [47 Cal.Rptr. 69].)

We think it quite clear that the true object of the water conditioning contract is the furnishing of the exchange unit which, by itself and without requiring any performance of human labor, softens the water. It is true that human labor or service is involved in regenerating the ion-exchange material, but realistically viewed the customer's purpose in entering into the contract is to obtain, not personal services, but a properly generated and efficiently functioning water conditioning unit. Plaintiff's contention that it is providing primarily a water softening service and that the transfer of the water conditioning unit is merely incidental to the provision of this service simply does not fit the facts—the water softening is done by the water conditioning unit, the service of plaintiff's employees of generating and installing being merely incidental to the function performed by the unit.

Finally plaintiff contends that its business is indistinguishable from various other businesses involving service and the use of tangible personal property which the Board has held not to be lease transactions and that its "water softening service is so analogous to such other cases as to require the same use tax treatment." We shall explain why we consider plaintiff's several arguments unpersuasive.

Plaintiff first points out that section 6006, subdivision (g)(2)[7] provides that the Sales and Use Tax Law does not apply to a linen supplier and argues that the "furnishing of soft water by [plaintiff] to a customer's home is almost identical in nature to the linen supply service." We do not see how this reference assists plaintiff, since the point plaintiff attempts to make contains its own complete answer, namely that the Legislature has seen fit to provide a statutory exemption for the linen industry. Indeed it would appear that if the exemption indicated in subsection (2) had not been enacted, the lease transactions now covered by the subsection would have fallen within the statutory definition of "sale."

Second, plaintiff argues that the Board "has ruled in a number of other cases that income from similar businesses [is] not subject to sales tax." Plaintiff merely lists, without any development of the point other than a citation to certain sales tax rulings of the Board, the following four types of businesses: (1) swimming pool contractors who service pools with chemicals; (2) exterminators who use electronic devices; (3) security companies who utilize burglar alarms; and (4) community antenna television services. The tax rulings pertaining to the first two types of businesses antedated the 1965 amendments to the Sales and Use Tax Law defining "sale" and "purchase" as including "any lease of tangible personal property." (See fn. 3, *ante.*) These rulings were written at a time when such types of businesses were considered as consumers, rather than retailers, of the chemicals provided with the service; we do not apprehend that they dealt with the factual situation now presented to us, namely the lease of tangible personal property. With respect to the last two types of businesses, plaintiff, as we have already observed, has presented no facts whatsoever as to the methods of conducting the businesses involved, no discussion of the basis of the pertinent tax rulings referred to, and no analyses of plaintiff's position that these last two types of businesses are so indistinguishable from plaintiff's business as to compel a similar tax treatment in the instant case.[8]

---

[7]Section 6006, subdivision (g)(2) provides: " 'Sale' means and includes:

" .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(g) Any lease of tangible personal property in any manner or by any means whatsoever, for a consideration, except a lease of:

" .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(2) Linen supplies and similar articles when an essential part of the lease agreement is the furnishing of the recurring service of laundering or cleaning the articles."

[8]Indeed, if it were necessary to analogize, we would think, as the Board itself suggests, that plaintiff's business appears similar to the situation involved in the leasing of

The judgment is reversed and the cause is remanded to the trial court with directions to enter judgment for defendant.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.

---

automatic data processing equipment, where the taxable rental is deemed to include the incidental services required to be provided as part of the lease, namely the programming of the equipment, the training of operators, and the general maintenance of the equipment. (Cal. Admin. Code, tit. 18, § 1502, subd. (k).) In each instance, it would seem that the true object of the transaction is the equipment itself while any services involved are merely incidental to its functioning.