[No. A041904. First Dist., Div. Three. Jan. 31, 1989.]

CONTINENTAL WATER CONDITIONING COMPANY OF THE BAY AREA, INC., Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## COUNSEL

John M. Gregory and Faisant, Miller & Gregory for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**STRANKMAN, J.**—By its complaint, appellant Continental Water Conditioning Company of the Bay Area, Inc. (Continental), a California corporation, sought the refund of a sales tax which it paid under protest to respondent State Board of Equalization (Board). Continental appeals from the judgment entered in favor of Board following trial. We affirm.

I

*Facts*

We adopt in essential part the facts set forth by Board in its respondent's brief which we find are supported by the record. Continental is in the business of selling and servicing water purification tanks. Continental's customers are industries and hospitals. The tanks contain resins which remove impurities from water by a "deionization," or ion exchange process. After repeated use the resins in the tanks become depleted and are no longer usable to remove the impurities. It is then necessary to "regenerate" the resins by flushing them with chemicals. The flushing process is performed at Continental's plants by trained operators. Typically, Continental removes the depleted tanks from its customers and replaces them with similar tanks which have been regenerated. The customer is charged for each replacement.

The charges for replacing depleted tanks with regenerated tanks (regeneration charges) are separate from the charges Continental's customers pay either to purchase a tank or to lease one on a monthly basis. Continental paid sales tax on the sales of its tanks to its customers and on the lease payments. It did not pay any sales tax, however, on the regeneration charges.

During an audit, the Board discovered that Continental had not paid any sales tax on the regeneration charges. The Board accordingly issued an assessment against Continental in the amount of $88,264.46 on these charges. Continental paid the amount of the assessment and then, after exhausting its administrative remedies, brought this action.

## II

### *Issue*

The sole issue on appeal is whether the regeneration charges are subject to the sales and use tax under Revenue and Taxation Code section 6001 et seq.[1] The Board contends that the replacement of depleted tanks with regenerated tanks constitutes a taxable "sale" as defined under section 6006. Continental contends that the transaction is predominantly one for services and therefore not taxable as a sale.

## III

### *Discussion*

Section 6006, subdivision (a), defines a taxable sale as follows: "Any transfer of title or possession, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration. 'Transfer of possession' includes only transactions found by the board to be in lieu of a transfer of title, exchange, or barter."

To implement section 6006, subdivision (a), the Board has promulgated sales and use tax rules set forth in title 18 of the California Code of Regulations. California Code of Regulations, title 18, section 1546, subdivision (b)(4), provides: "If the method of repairing or reconditioning certain tangible personal property involves commingling property delivered to a repairman or reconditioner with similar property so that the customer receives

---

[1] All further statutory references are to the Revenue and Taxation Code unless indicated otherwise.

repaired or reconditioned property which may not be the identical property delivered to the repairman or reconditioner but which is exactly the same kind of property or derived from exactly the same kind of property as that so delivered, tax applies to the amount charged by the repairman or reconditioner for the repaired or reconditioned property."

Continental does not dispute that California Code of Regulations, title 18, section 1546, subdivision (b)(4), constitutes a valid interpretation and implementation of section 6006, subdivision (a).

The Board contends, and we agree, that the provisions of California Code of Regulations, title 18, section 1546, subdivision (b)(4), describe the transaction in the instant case. Continental delivered to its customers tangible personal property—the tanks—which were "reconditioned," and which were different but "exactly the same kind" as the tanks which they replaced. The transaction therefore is taxable as a sale under section 6006, subdivision (a).

*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86 [130 Cal.Rptr. 321, 550 P.2d 593], supports the Board's position. There, the taxpayer placed water conditioning units in the homes of customers which, like the water purification tanks here, deionized the water with an ion-exchange material which needed to be regenerated periodically. The taxpayer connected the units to the customer's water system, periodically replaced the ion-exchange material in the unit, and regenerated the exhausted material at its plant. The customer paid an initial installation charge and a monthly charge for water conditioning. At all times the taxpayer retained ownership of the units.

The Board contended that these transactions were taxable leases under section 6006, subdivision (g). The taxpayer disagreed, reasoning that under California Code of Regulations, title 18, section 1501,[2] the water conditioning contracts were not taxable leases because "the true object" of the contracts was the service per se, even though some tangible personal property was transferred.

Our Supreme Court disagreed, ruling that because the customers had the use of and full dominion and control over the units while connected to their

---

[2] California Code of Regulations, title 18, section 1501, provides in pertinent part: "The basic distinction in determining whether a particular transaction involves a sale of tangible personal property or the transfer of tangible personal property incidental to the performance of a service is one of the true objects of the contract; that is, is the real object sought by the buyer the service per se or the property produced by the service. If the true object of the contract is the service per se, the transaction is not subject to tax even though some tangible personal property is transferred."

water systems, the use of the units was taxable under section 6006. The court stated: "We think it quite clear that the true object of the water conditioning contract is the furnishing of the exchange unit which, by itself and without requiring any performance of human labor, softens the water. It is true that human labor or service is involved in regenerating the ion-exchange material, but realistically viewed the customer's purpose in entering into the contract is to obtain, not personal services, but a properly generated and efficiently functioning water conditioning unit." (*Culligan Water Conditioning* v. *State Bd. of Equalization, supra,* 17 Cal.3d. at p. 96.)

We conclude that *Culligan* compels the determination reached by the trial court here.

## IV

### *Disposition*

The judgment is affirmed.

White, P. J., and Merrill, J., concurred.