[No. B184608. Second Dist., Div. Three. Mar. 15, 2006.]

FARMERS INSURANCE EXCHANGE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DOUGLAS RYAN, Real Party in Interest.

[No. B184610. Second Dist., Div. Three. Mar. 15, 2006.]

SAFECO INSURANCE COMPANY OF AMERICA et al., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PROPOSITION 103 ENFORCEMENT PROJECT, Real Party in
Interest.

844

## COUNSEL

Barger & Wolen, Steven H. Weinstein, Richard G. De La Mora, Marina M. Karvelas and Spencer Y. Kook for Petitioners.

Heller Ehrman, Vanessa Wells and Victoria Collman Brown for State Farm Mutual Automobile Insurance Company as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Bill Lockyer, Attorney General, David S. Chaney, Assistant Attorney General, Mark P. Richelson, W. Dean Freeman and Diane Spencer Shaw, Deputy Attorneys General; Gary Cohen, Elizabeth Mohr and Bryant W. Henley for the Department of Insurance as Amicus Curiae on behalf of Respondent.

Roxborough, Pomerance & Nye, Drew E. Pomerance, Marina N. Vitek, Vincent S. Gannuscio; Goshgarian & Marshall, Mark Goshgarian and John A. Marshall for Real Party in Interest Douglas Ryan.

Lerach Coughlin Stoia Geller Rudman & Robbins, John J. Stoia, Jr., Theodore J. Pintar, Kevin K. Green, James D. McNamara; the Foundation for Taxpayer and Consumer Rights, Harvey Rosenfield and Pamela M. Pressley for Real Party in Interest the Proposition 103 Enforcement Project.

**OPINION**

**CROSKEY, J.**—Insurance Code section 1861.02,[1] enacted in November 1988 as part of Proposition 103, limits the factors that an insurer can consider in determining insurance rates. Statutes predating Proposition 103 created a comprehensive scheme for administrative enforcement of insurance rate regulations. Proposition 103 provided for greater public participation in those proceedings and enhanced the effectiveness and public accountability of the Insurance Commissioner (Commissioner). Section 1861.10, subdivision (a), also enacted as part of Proposition 103, states, "Any person may initiate or intervene in any proceeding permitted or established pursuant to this chapter, challenge any action of the commissioner under this article, and enforce any provision of this article." The superior court, ruling on motions for judgment on the pleadings, determined that section 1861.10 creates a private right of action against an insurer for a violation of section 1861.02. The defendant insurers petitioned this court for extraordinary relief. In these consolidated writ proceedings, we conclude that there is no private right of action for a violation of section 1861.02 and grant the insurers' petitions.

## PROCEDURAL BACKGROUND

### 1. *Complaints*

Douglas Ryan, on behalf of himself and the general public, sued Farmers Insurance Exchange (Farmers) in April 2001 alleging that it denied a Good Driver Discount to drivers with no prior automobile insurance coverage, in violation of Insurance Code section 1861.02. He alleged a single count for unfair business practices under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). He later dismissed the action without prejudice and filed a complaint with the Commissioner pursuant to a stipulation with Farmers. The Commissioner issued an order in January 2002 stating that the Department of Insurance had proposed a regulation to define a permissible "persistency" credit, stated that it would be inefficient to address each insurer's class plan piecemeal, and declined to accept jurisdiction.

The Proposition 103 Enforcement Project (the Project), on behalf of itself and the general public, sued Safeco Insurance Company of America (Safeco) and First National Insurance Company of America (First National) in January 2002 (Super. Ct. L.A. County, No. BC266219), alleging that they charged higher premiums to drivers with no prior automobile insurance coverage or no continuous coverage, in violation of Insurance Code section 1861.02, and that they failed to report their true underwriting practices in violation of section 1859. The

---

[1] All statutory references are to the Insurance Code unless otherwise specified.

Project alleged counts for (1) violation of section 1859, (2) violation of section 1861.02, and (3) unfair business practices. The superior court stayed the action in July 2002 stating that the alleged Insurance Code violations were within the primary jurisdiction of the Commissioner. Meanwhile, the Department of Insurance adopted regulations addressing the proper use of the "persistency" rating factor.[2] The regulations became effective in September and November 2002 (Cal. Code Regs., tit. 10, §§ 2632.5, subd. (d)(11), 2632.13, subd. (i)).[3] After the Project submitted the matter to the Commissioner, the Commissioner issued an order in December 2002 declining to exercise jurisdiction "because the factual questions presented by the litigation do not require any actuarial or rate making expertise, matters which the California Department of Insurance regularly handles, and matters in which the Commissioner is vested with unique authority. The particular facts necessary to resolve the dispute will best be obtained through the discovery processes available in the Superior Court."

Ryan commenced another action against Farmers in June 2003 (Super. Ct. L.A. County, No. BC297437), filing a complaint alleging a single count for unfair business practices. The superior court determined that the two actions, and several others, were related and stayed the actions pending a final decision by the Court of Appeal in *Donabedian v. Mercury Ins. Co.* After that opinion was filed (*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968 [11 Cal.Rptr.3d 45] (*Donabedian*)), the court continued the stay pending a final decision by the Court of Appeal in *Poirer v. State Farm Mut. Auto Ins. Co.* The Court of Appeal filed a nonpublished opinion in *Poirer* in October 2004 (Oct. 15, 2004, B165389 [nonpub. opn.]).

### 2. *Motions for Judgment on the Pleadings*

The insurers jointly moved for judgment on the pleadings in both cases arguing that the plaintiffs had no standing to sue for violation of the unfair competition law in light of Proposition 64, approved by the electorate in November 2004, and that the alleged violations of sections 1859 and 1861.02 did not give rise to a private right of action. The superior court granted the motion as to the unfair competition law counts in both actions in March 2005, with leave to amend the complaints to substitute plaintiffs with standing under the new law. The plaintiffs apparently have not amended their complaints.

After further briefing, the court issued an order on May 24, 2005, in case No. BC297437 stating that because the Commissioner declined jurisdiction,

---

[2] "The term 'rating factor' is defined as any factor, including discounts, used by an insurer which establishes or affects the rates, premiums, or charges assessed for a policy of automobile insurance." (Cal. Code Regs., tit. 10, § 2632.2, subd. (a).)

[3] The new regulations prohibit consideration of a driver's prior insurance, or absence of prior insurance, with another, nonaffiliated insurer. (Cal. Code Regs., tit. 10, § 2632.5, subd. (d)(11)(B).)

"there is no further basis to invoke the doctrine of primary jurisdiction." The order stated that section 1861.10, subdivision (a) authorizes a private right of action and quoted language from *Donabedian, supra*, 116 Cal.App.4th 968. The court granted Farmers's motion for judgment on the pleadings with leave to amend the complaint to allow Ryan to allege a cause of action for violation of section 1861.02. The court invited review of its interlocutory ruling pursuant to Code of Civil Procedure section 166.1. The court issued an order on June 15, 2005, in case No. BC266219 denying the motion for judgment on the pleadings by Safeco and First National for the reasons stated in the order of May 24, 2005, in case No. BC297437, and incorporated that order.

### 3. *Original Proceedings in This Court*

The insurers in both cases petitioned this court for a writ of mandate challenging the ruling that section 1861.10, subdivision (a) creates a private right of action based on a violation of section 1861.02. We issued an order to show cause and consolidated the proceedings for purposes of our review.

## CONTENTIONS

The insurers contend section 1861.10, subdivision (a) does not create a private right of action based on an insurer's violation of section 1861.02. The plaintiffs and the Department of Insurance as amicus curiae contend the statutory language "Any person may . . . enforce any provision of this article" (§ 1861.10, subd. (a)) expressly creates a private right of action.

## DISCUSSION

### 1. *Standard of Review*

A defendant can move for judgment on the pleadings on the ground that the complaint fails to state facts sufficient to state a cause of action against the defendant. (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii).) A trial court ruling on the motion must consider only the face of the complaint and matters subject to judicial notice, accept as true the properly pleaded factual allegations of the complaint, and liberally construe the complaint. (*Id.*, § 438, subd. (d); *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515–516 [101 Cal.Rptr.2d 470, 12 P.3d 720].) We independently review the trial court's ruling. (*Gerawan Farming, supra*, at p. 515.)

### 2. *Whether a Statute Creates a Private Right of Action Is a Question of Statutory Construction Depending on the Intent of the Enacting Body*

A statute creates a private right of action only if the enacting body so intended. (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d

287, 305 [250 Cal.Rptr. 116, 758 P.2d 58] (*Moradi-Shalal*); *Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 131 [62 Cal.Rptr.2d 620].) *Moradi-Shalal* is instructive. In that case, our Supreme Court held that the Legislature did not intend to create a private right of action to enforce section 790.03, subdivision (h), overruling *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] (*Royal Globe*). Section 790.03, subdivision (h), part of the Unfair Trade Practices Act (§ 790 et seq.), prohibits certain unfair claims settlement practices. The act authorizes the Commissioner to investigate violations, conduct hearings, impose penalties, and issue cease and desist orders, and provides for judicial review. (*Id.*, §§ 790.04, 790.05.) Section 790.09 states that a cease and desist order issued by the Commissioner shall not "relieve or absolve" an insurer "from any administrative action . . . , civil liability or criminal penalty under the laws of this State arising out of the methods, acts or practices found unfair or deceptive." *Moradi-Shalal* held that neither section 790.03 nor section 790.09 creates a private right of action against an insurer for unfair claims settlement practices. (*Moradi-Shalal, supra,* at pp. 294, 304.)

*Moradi-Shalal* adopted statements by the dissent in *Royal Globe* that if the Legislature had intended to create a private right of action, " 'then surely much more direct and precise language would have been selected' than the language of section 790.09," and that " 'one would reasonably have expected that the Legislature simply would have directly imposed such liability in clear, understandable, unmistakable terms, as it has done in numerous other statutes.' " (*Moradi-Shalal, supra,* 46 Cal.3d at pp. 294–295, quoting *Royal Globe, supra,* 23 Cal.3d at p. 896 (dis. opn. of Richardson, J.).) The court concluded that the legislative history did not indicate an intent to create a private right of action (46 Cal.3d. at pp. 295, 304), and stated, "The fact that neither the Legislative Analyst nor the Legislative Counsel observed that the new act created a private right of action is a strong indication that the Legislature never intended to create such a right of action. [Citations.]" (*Id.* at p. 300.)

Subsequent opinions by the Courts of Appeal have held that a statute creates a private right of action only if the statutory language or legislative history affirmatively indicates such an intent. (*Vikco Ins. Services, Inc. v. Ohio Indemnity Co.* (1999) 70 Cal.App.4th 55, 62 [82 Cal.Rptr.2d 442]; *Crusader Ins. Co. v. Scottsdale Ins. Co., supra,* 54 Cal.App.4th at pp. 132–133, 135–137.) That intent need not necessarily be expressed explicitly, but if not it must be strongly implied. (See *Vikco, supra,* at p. 62; *Crusader, supra,* at p. 133.) Particularly when regulatory statutes provide a comprehensive scheme for enforcement by an administrative agency, the courts ordinarily conclude that the Legislature intended the administrative remedy to be exclusive unless the statutory language or legislative history clearly indicates an intent to create a private right of action. (*Moradi-Shalal, supra,* 46 Cal.3d at pp. 294–295, 300; *Vikco, supra,* 70 Cal.App.4th 55, 62–65.)

We construe a statute enacted by an initiative measure under the same principles of construction applicable to statutes enacted by the Legislature. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900 [135 Cal.Rptr.2d 30, 69 P.3d 951].) Our task is to ascertain the intent of the electorate so as to effectuate the purpose of the law. (*Id.* at p. 901.) We first examine the statutory language, giving the words of the statute their ordinary and usual meaning and construing them in the context of the statute as a whole and the overall statutory scheme. (*Ibid.*) "[W]e ' "read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " ' [Citations.]" (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].) If a statute is ambiguous, we consider other indicia of the voters' intent, such as the analyses and arguments contained in the official ballot pamphlet. (*Robert L.*, *supra*, at p. 901.)

### 3. *Proposition 103*

California voters approved Proposition 103 as an initiative measure in November 1988. The stated purpose of the initiative was "to protect consumers from arbitrary insurance rates and practices, to encourage a competitive insurance marketplace, to provide for an accountable Insurance Commissioner, and to ensure that insurance is fair, available, and affordable for all Californians." (Stats. 1988, p. A-276, § 2.) Proposition 103 added article 10 (§§ 1861.01–1861.14) to division 1, part 2, chapter 9 of the Insurance Code (chapter 9),[4] added other sections to the Insurance Code and Revenue and Taxation Code, and repealed several Insurance Code sections that had protected the insurance industry from state antitrust laws. The initiative required an immediate 20 percent rollback of rates for automobile insurance and other forms of insurance (§ 1861.01); established mandatory rating factors for determining automobile insurance rates, authorized the Commissioner to approve other rating factors, and prohibited use of unapproved rating factors (§ 1861.02, subd. (a));[5] required automobile insurers to offer a Good Driver Discount of at least 20 percent (§ 1861.02, subds. (b),

---

[4] The Legislature added sections 1861.15 and 1861.16 to article 10 in 1990. (Stats. 1990, ch. 1185, §§ 1, 2, pp. 4954–4956.)

[5] Section 1861.02, subdivision (a) states: "Rates and premiums for an automobile insurance policy, as described in subdivision (a) of Section 660, shall be determined by application of the following factors in decreasing order of importance: [¶] (1) The insured's driving safety record. [¶] (2) The number of miles he or she drives annually. [¶] (3) The number of years of driving experience the insured has had. [¶] (4) Those other factors that the commissioner may adopt by regulation and that have a substantial relationship to the risk of loss. The regulations shall set forth the respective weight to be given each factor in determining automobile rates and premiums. Notwithstanding any other provision of law, the use of any criterion without approval shall constitute unfair discrimination."

(c));[6] and established the office of Commissioner as an elected, rather than appointed, office (§ 12900). Proposition 103 also required that insurance rates be approved by the Commissioner prior to use (§ 1861.01, subd. (c)), required insurers to apply to the Commissioner for approval of future rate changes, and provided for public hearings on applications (§ 1861.05, subds. (b), (c)). Section 1861.05, subdivision (a), states in part, "No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter."

Proposition 103 added section 1861.03, subdivision (a), which states, "The business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to, the Unruh Civil Rights Act (Sections 51 to 53, inclusive, of the Civil Code), and the antitrust and unfair business practices laws (Parts 2 (commencing with section 16600) and (commencing with Section 17500) of Division 7 of the Business and Professions Code."[7] The initiative also added section 1861.10, subdivision (a), which states, "Any person may initiate or intervene in any proceeding permitted or established pursuant to this chapter, challenge any action of the commissioner under this article, and enforce any provision of this article." The initiative included an uncodified provision stating, "This act shall be liberally construed and applied in order to fully promote its underlying purposes." (Stats. 1988, p. A-290, § 8.)

The public's dissatisfaction with former laws regulating insurance rates provided the primary impetus for Proposition 103. The former laws were widely viewed as ineffective. The uncodified findings and declaration of the initiative stated, "Enormous increases in the cost of insurance have made it both unaffordable and unavailable to millions of Californians. [¶] The existing laws inadequately protect consumers and allow insurance companies to charge excessive, unjustified and arbitrary rates. [¶] Therefore, the People of California declare that insurance reform is necessary. First, property-casualty insurance rates shall be immediately rolled back to what they were on

---

[6] Section 1861.02, subdivision (b) states in relevant part: "(1) Every person who meets the criteria of Section 1861.025 shall be qualified to purchase a Good Driver Discount policy from the insurer of his or her choice. An insurer shall not refuse to offer and sell a Good Driver Discount policy to any person who meets the standards of this subdivision." Subdivision (c) states in relevant part: "The absence of prior automobile insurance coverage, in and of itself, shall not be a criterion for determining eligibility for a Good Driver Discount policy, or generally for automobile rates, premiums, or insurability."

[7] Section 1860.2, which predated Proposition 103 and is still effective, states: "The administration and enforcement of this chapter shall be governed solely by the provisions of this chapter. Except as provided in this chapter, no other law relating to insurance and no other provisions in this code heretofore or hereafter enacted shall apply to or be construed as supplementing or modifying the provisions of this chapter unless such other law or other provision expressly so provides and specifically refers to the sections of this chapter which it intends to supplement or modify."

November 8, 1987, and reduced no less than an additional 20%. Second, automobile insurance rates shall be determined primarily by a driver's safety record and mileage driven. Third, insurance rates shall be maintained at fair levels by requiring insurers to justify all future increases. Finally, the state Insurance Commissioner shall be elected. Insurance companies shall pay a fee to cover the costs of administering these new laws so that this reform will cost taxpayers nothing." (Stats 1988, p. A-276, § 1.)

An administrative procedure to enforce the laws regulating insurance rates predated Proposition 103 and still exists. Section 1858, subdivision (a) states that any person aggrieved by a rate charged, rating plan, rating system, or underwriting rule may file a complaint with the Commissioner and request a public hearing. The Commissioner must review and investigate the matter and may conduct a public hearing. (§§ 1858, subd. (c), 1858.01, subds. (a) & (b), 1858.1, 1858.2.) If the Commissioner finds that a violation has occurred, the Commissioner must issue an order prohibiting the misconduct and may order other corrective action. (§ 1858.3.) Any finding or determination by the Commissioner under chapter 9 is subject to judicial review under the independent judgment standard, including a decision not to conduct a hearing. (§§ 1858.6, 1861.09.) Any failure to comply with a final order by the Commissioner gives rise to a monetary penalty, and the Commissioner may bring an action in the superior court to enforce collection. (§ 1859.1.) The provisions discussed in this paragraph all predated Proposition 103. Proposition 103 enhanced the preexisting administrative procedures by extending standing from "[a]ny person aggrieved" (§ 1858, subd. (a)) to "[a]ny person" (§ 1861.10, subd. (a)) and required more exacting review of insurance rates and approval of rates by the Commissioner.[8]

4. *Section 1861.10, Subdivision (a) Does Not Create a Private Right of Action*

Section 1861.10, subdivision (a), quoted in full *ante*, states initially, "Any person may initiate or intervene in any proceeding permitted or

---

[8] Use of the language "[a]ny person" (Ins. Code, § 1861.10, subd. (a)) confers standing on persons who are not real parties in interest notwithstanding the general requirement that an action be prosecuted by the real party in interest. (Code Civ. Proc., § 367 ["Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."].) Thus, "any person" may initiate or intervene in any proceeding "permitted or established" pursuant to chapter 9. As we have already described, such proceedings are limited to administrative proceedings before the Commissioner and judicial review of the Commissioner's decisions, direct legal actions authorized by section 1861.03, subdivision (a), and judicial actions by the Commissioner to enforce collection of penalties. This statutory language would thus appear to permit members of the public, including entities such as the Project, to initiate and intervene in such proceedings and present their views, arguments on or objections to rulings of the Commissioner.

established pursuant to this chapter." This language expressly encompasses not only a proceeding concerning an application to increase rates, but also any other proceeding permitted or established pursuant to chapter 9. The plain language of this clause provides no independent authority for a proceeding not otherwise authorized by chapter 9, but creates broad standing in a proceeding "permitted or established pursuant to" chapter 9. Section 1861.03, subdivision (a) states that the insurance business is subject to state laws applicable to any other business, including specifically the Unruh Civil Rights Act, antitrust laws, Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.), unfair competition law (*id.*, § 17200 et seq.), and false advertising law (*id.*, § 17500 et seq.). Chapter 9 therefore "permit[s]" only a proceeding authorized by those laws or by any other law generally applicable to other businesses. Section 1861.02, however, is not among the laws specified in section 1861.03, subdivision (a) and is not generally applicable to other businesses.

■ Chapter 9 authorizes, and therefore "establish[es]" within the meaning of the first clause of section 1861.01, subdivision (a), an administrative proceeding to challenge a rate charged, rating plan, rating system, or underwriting rule (§ 1858, subd. (a)); an administrative proceeding to review an application for a rate increase (§§ 1861.05, 1861.08); judicial proceedings to review those administrative decisions (§§ 1858.6, 1861.09); and a judicial proceeding by the Commissioner to enforce collection of a monetary penalty (§ 1859.1). Chapter 9 establishes only administrative proceedings and judicial proceedings to review those administrative decisions or enforce a monetary penalty. ■ Apart from the possibility that another part of section 1861.10, subdivision (a) itself creates a private right of action based on a violation of section 1861.02, we conclude that chapter 9 does not permit or establish a judicial proceeding against an insurer based on a violation of section 1861.02, and that the first clause of section 1861.10, subdivision (a) does not create a private right of action based on a violation of section 1861.02.

■ The authority provided by the first clause of section 1861.10, subdivision (a) for "[a]ny person" to "initiate or intervene in" a proceeding is expressly limited to proceedings "permitted or established pursuant to this chapter." (*Ibid.*) That authority is limited to conferring standing to "[a]ny person" in a proceeding otherwise authorized by law.[9] The second and third clauses of the statute, in contrast, do not specify the types of proceedings in which "[a]ny person may . . . challenge any action of the commissioner under this article, and enforce any provision of this article." (*Ibid.*) The plaintiffs construe the third clause, "enforce any provision of this article," as providing independent authority for "[a]ny person" to maintain a civil action to enforce any provision of article 10. In our view, the plain language of the provision, liberally construed, does not justify such an expansive reading. A more

---

[9] See footnote 8, *ante.*

reasonable construction of the express language of the statute is that both the second and third clauses are subordinate to the first clause and are limited to the proceedings referenced in the initial clause. We thus construe section 1861.10, subdivision (a) to mean that any person may "challenge any action of the commissioner under this article" (*ibid.*) and "enforce any provision of this article" (*ibid.*) only in a proceeding otherwise authorized by law and referenced in the initial clause.

Several additional considerations support this conclusion. First, the analyses and arguments in the official ballot pamphlet did not indicate that Proposition 103 would create a private right of action. Neither the analysis by the Legislative Analyst, the summary prepared by the Attorney General, nor the arguments for or against the initiative so stated. The Legislative Analyst and Attorney General both stated that the measure would increase administrative costs for the Department of Insurance, but made no mention of an anticipated increase in court administrative costs in discussing the costs to state and local governments, as would be expected if the initiative created a broad private right of action. The text of the initiative together with the analyses and arguments in the ballot pamphlet do not indicate that the voters intended to create a private right of action.

Second, Proposition 103 preserved and enhanced a comprehensive administrative scheme regulating insurance rates. Insurance rates must be approved by the Commissioner prior to use, and the Commissioner may conduct a public hearing on a rate change application (§§ 1861.01, subd. (c), 1861.05, subds. (b) & (c).) The Commissioner must review and investigate a complaint concerning a rate charged, rating plan, rating system, or underwriting rule, and may conduct a public hearing. (§ 1858.) By entrusting complaints to the Commissioner in the first instance, chapter 9 relies on the Commissioner's expertise in technical matters concerning insurance rates and ensures uniform rate regulation. The Commissioner's decision is subject to judicial review, including a decision not to hold a hearing. (§§ 1858.6, 1861.09.) Although the independent judgment standard of review applies (§ 1858.6), the reviewing court ordinarily has the benefit of both the Commissioner's fact finding and the application of the Commissioner's expertise on technical matters. The voters are presumed to be aware of existing law (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 283 [87 Cal.Rptr.2d 222, 980 P.2d 927]), including the administrative enforcement provisions. The provisions for enforcement by the Commissioner would serve little purpose and the benefits of administrative review and enforcement could be thwarted if a plaintiff could circumvent the administrative process in every case by filing directly in court. Although the court could stay an action based on the primary jurisdiction doctrine (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 396–400 [6 Cal.Rptr.2d 487, 826 P.2d 730] (*Farmers*)), it seems unlikely that the voters intended to require that exercise. Absent a more

explicit indication that the electorate intended to create a private right of action, we would not conclude that the electorate so intended.

Third, section 1860.2 (quoted in full in fn. 7, *ante*) states, "The administration and enforcement of this chapter shall be governed solely by the provisions of this chapter." In light of section 1860.2, the absence of any reference in chapter 9 to the means to "enforce any provision of this article" (§ 1861.10, subd. (a)) apart from the expressly specified administrative proceedings and judicial proceedings to review those administrative proceedings or enforce a monetary penalty, and indirectly through laws applicable to other businesses (§ 1861.03, subd. (a)), indicates that the voters did not intend the quoted language in section 1861.10, subdivision (a), to create a private right of action.

Our conclusion is consistent with *Farmers, supra,* 2 Cal.4th at page 382, footnote 1, in which our Supreme Court stated, albeit in dictum, that claims for violations of sections 1861.02 and 1861.05 were within the exclusive jurisdiction of the Commissioner and did not support a direct private right of action. In that case, the trial court sustained a demurrer to the count for violations of sections 1861.02 and 1861.05 based on the failure to exhaust administrative remedies. (*Farmers, supra,* at p. 382.) The Supreme Court stated, with regard to the trial court's conclusion: "This conclusion appears correct. Pursuant to the Insurance Code, the People's claims under that code are exclusively the province of the Insurance Commissioner. (§ 1860.2 ['The . . . enforcement of this chapter shall be governed solely by the provisions of this chapter.']; § 1858 et seq. [setting out procedures for administrative determination of rate and rate-making issues].) Judicial review is of course available to challenge those administrative determinations (see §§ 1858.6, 1861.09), but such review may be obtained only after the available administrative procedures have been invoked and exhausted." (*Farmers, supra,* at p. 382, fn. 1.)

*Donabedian, supra,* 116 Cal.App.4th 968, is not on point. The plaintiff in that case alleged that the insurer's consideration of the absence of prior insurance in determining eligibility for a Good Driver Discount, rates, and insurability was an unfair business practice. The plaintiff did not allege a direct count for violation of section 1861.02, subdivision (c), as the plaintiffs here allege, but only a count for violation of the unfair competition law based on a violation of section 1861.02. (*Donabedian, supra,* at p. 974.) The plaintiff submitted the dispute to the Commissioner, who declined to exercise jurisdiction. (*Id.* at pp. 974–975.) *Donabedian* held that the complaint stated a cause of action for violation of the unfair competition law based on an illegal act or practice. (*Id.* at pp. 977, 987.) The court explained that the plain language of sections 1861.03, subdivision (a) and 1861.10, subdivision (a)

compelled the conclusion that the defendant was subject to the unfair competition law and that the plaintiff could enforce section 1861.02, subdivision (c) in an unfair competition law proceeding. (*Donabedian, supra*, at p. 977.) The court explained further that the unfair competition law count was originally cognizable in the courts and was not within the Commissioner's exclusive jurisdiction, citing *Farmers, supra*, 2 Cal.4th at page 391, and that there was no basis to invoke the primary jurisdiction doctrine after the Commissioner had declined to exercise jurisdiction. (*Donabedian, supra*, at pp. 986–987.) *Donabedian* did not hold or imply that section 1861.10, subdivision (a) provided an independent basis for a private right of action under either the unfair competition law or section 1861.02, subdivision (c). Rather, *Donabedian* stands for the proposition that because section 1861.03, subdivision (a) subjects insurers to the unfair competition law, a cause of action under the unfair competition law is a "proceeding permitted . . . pursuant to" chapter 9 within the meaning of section 1861.10, subdivision (a).

*Goehring v. Chapman University* (2004) 121 Cal.App.4th 353 [17 Cal.Rptr.3d 39] (*Goehring*) also is distinguishable. It involved Business and Professions Code section 6061, subdivision (h), which states that an unaccredited law school "shall make a full refund of all fees paid by students" in certain circumstances. Neither the statute nor regulations enacted pursuant to the statute established an administrative procedure for refund claims. (*Goehring, supra*, at pp. 377–378.) *Goehring* held that the quoted statutory language made it clear that the Legislature intended to allow students to make individual claims for refunds and "must have intended to give them private rights of action to pursue such claims." (*Ibid.*) *Goehring* construed the statute in light of the absence of an administrative procedure for refund claims. Because chapter 9, in the case before us, provides a comprehensive administrative enforcement procedure providing a strong indication that the voters did not intend to create a private right of action, *Goehring* is not on point.

The plaintiffs cite an article by the author of Proposition 103 published in legal periodicals in July 1988 stating that the initiative would "provide[] individual consumers with the absolute right to go to the Department of Insurance or the courts should insurance companies fail to comply with their responsibilities. If the Department of Insurance fails to respond effectively to a consumer's complaint, consumers will not be locked out of the courts— unlike the present situation." (Rosenfield, *Revolting the Insurance Crisis: The Voter Revolt Initiative*, L.A. Daily J. & S.F. Banner Daily J. (Jul. 15, 1988) Daily Journal Report, p. 6.) The plaintiffs also cite a magazine article by the same author published 14 years after the November 1988 election. We cannot presume that the electorate as a whole was aware of statements made in an article published in legal periodicals before the election, or in a magazine article published after the election, or that the voters intended the initiative to

effect a change in law that was not expressed or strongly implied in either the text of the initiative or the analyses and arguments in the official ballot pamphlet. (*Robert L. v. Superior Court, supra,* 30 Cal.4th at p. 904.)[10]

■ The plaintiffs also argue that section 1861.10, subdivision (b) supports the conclusion that the voters intended the third clause of subdivision (a) to create a private right of action. Subdivision (b) states, "The commissioner or a court shall award reasonable advocacy and witness fees and expenses to any person who demonstrates that (1) the person represents the interests of consumers, and, (2) that he or she has made a substantial contribution to the adoption of any order, regulation or decision by the commissioner or a court. Where such advocacy occurs in response to a rate application, the award shall be paid by the applicant." In our view, the court proceedings referenced in subdivision (b) are court proceedings authorized elsewhere in chapter 9, including principally proceedings for judicial review of administrative decisions. The language of subdivision (b) does not support an inference that the voters intended subdivision (a) to authorize judicial proceedings apart from those authorized elsewhere in chapter 9.

■ The plaintiffs and the Department of Insurance argue that to construe the third clause of section 1861.10, subdivision (a) as limited to the proceedings referenced in the first clause would render the third clause mere surplusage because a party who is entitled to initiate or intervene in a proceeding can assert any right or remedy cognizable in the proceeding. We need not decide whether this is true as a general legal proposition or whether the first clause encompasses enforcement of all the provisions of article 10, because we conclude that the third clause clarifies and emphasizes that a party to a proceeding referenced in the first clause can enforce any provision of article 10 in the proceeding. A statute may clarify and emphasize a point notwithstanding the rule against surplusage. (*State Farm Mutual Automobile Ins. Co. v. Garamendi, supra,* 32 Cal.4th at pp. 1044–1046.) If a statutory provision viewed in context is not ambiguous, as here, the rule against surplusage is not controlling. (*Id.* at p. 1046; *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 234–235 [45 Cal.Rptr.2d 207, 902 P.2d 225].)

■ Finally, the construction of section 1861.10, subdivision (a) asserted by the Department of Insurance as amicus curiae in this proceeding is entitled

---

[10] "This court has made it clear that the 'motive or purpose of the drafters of a statute is not relevant to its construction, absent reason to conclude that the body which adopted the statute was aware of that purpose and believed the language of the proposal would accomplish it. [Citations.] The opinion of drafters or legislators who sponsor an initiative is not relevant since such opinion does not represent the intent of the electorate and we cannot say with assurance that the voters were aware of the drafters' intent. [Citations.]' [Citation.]" (*Robert L. v. Superior Court, supra,* 30 Cal.4th at p. 904.)

to no deference. Whether a statutory interpretation by an administrative agency is entitled to judicial deference, and the weight due to the agency's interpretation, "turns on a legally informed, commonsense assessment of [its] contextual merit." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12, 14 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) The two categories of factors to consider are those indicating that the agency has an interpretive advantage over the courts and those indicating that the agency's interpretation is probably correct. (*Id.* at p. 12.) An agency has an interpretive advantage with respect to matters within the agency's expertise and technical knowledge. (*Ibid.*) Factors indicating that an agency's interpretation is likely to be correct include careful consideration by senior agency officials, consistency in maintaining the interpretation, adoption of the interpretation contemporaneously with the legislative enactment of the statute in question, and adoption of a formal interpretive rule under the Administrative Procedures Act (Gov. Code, § 11340 et seq.). (*Yamaha, supra,* at pp. 12–13.) An agency's ad hoc assertion of a statutory interpretation in a particular matter or in the course of litigation, on the other hand, does not engender the same degree of respect. (*Culligan Water Conditioning v. State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593]; *Citicorp North American, Inc. v. Franchise Tax Bd.* (2000) 83 Cal.App.4th 1403, 1409 [100 Cal.Rptr.2d 509]; see *Yamaha, supra,* at p. 9.)

Whether section 1861.10, subdivision (a) creates a private right of action is not a technical question concerning insurance rates within the expertise of the Department of Insurance, but a legal question of the sort that ordinarily is the province of the courts in the first instance. There is no reason to believe that the department can discern the voters' intent on this question any better than the courts. Moreover, there is no indication that senior agency officials carefully considered the interpretation asserted by the department in this proceeding or that the department has maintained the interpretation consistently over time, adopted the interpretation at the time of the enactment of Proposition 103, or formally adopted the interpretation as a rule or regulation at any time. Accordingly, although we have carefully considered the arguments of the Department of Insurance as amicus curiae on behalf of the plaintiffs, as we have carefully considered the arguments of the parties and the amicus curiae on behalf of the insurers, there is no reason to defer to the Department of Insurance in this matter.

In light of this conclusion, we have no need to reach or discuss any of the other arguments raised by the parties.

### DISPOSITION

The insurers' petitions for writ of mandate are granted. Let a peremptory writ of mandate issue directing the superior court to vacate its orders of May

24, 2005 (Super. Ct. L.A. County, No. BC297437), and June 15, 2005 (Super. Ct. L.A. County, No. BC266219), and enter a new order in each action granting judgment on the pleadings without leave to amend. The insurers are entitled to recover their costs in these writ proceedings.

Klein, P. J., and Aldrich, J., concurred.

The petition of real party in interest The Proposition 103 Enforcement Project for review by the Supreme Court was denied June 14, 2006, S142934.