[No. B208402. Second Dist., Div. One. Dec. 30, 2009.]

ASSOCIATION OF CALIFORNIA INSURANCE COMPANIES et al., Plaintiffs and Appellants, v.
STEVE POIZNER, as Insurance Commissioner, etc., et al., Defendants and Respondents;
THE FOUNDATION FOR TAXPAYER AND CONSUMER RIGHTS, Intervener and Respondent.

1032

COUNSEL

Horvitz & Levy, David M. Axelrad, Mitchell C. Tilner; Barger & Wolen, Robert W. Hogeboom, Suh Choi and Michael A. S. Newman for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, W. Dean Freeman and Felix E. Leatherwood, Diane Spencer Shaw and Christine Zarifian, Deputy Attorneys General, for Defendants and Respondents.

Consumer Watchdog, Harvey Rosenfield, Pamela M. Pressley, Todd M. Foreman; Public Advocates, Inc., and Richard A. Marcantonio for Intervener and Respondent.

OPINION

MALLANO, P. J.—In 1988, the voters of California enacted an initiative measure designated on the ballot as Proposition 103. Proposition 103 required approval of insurance rate increases by the Insurance Commissioner of the State of California (Commissioner), provided for consumer participation in the administrative ratesetting process, and permitted the recovery of advocacy and witness fees and expenses (together referred to as compensation) under certain circumstances. This lawsuit involves the validity of the 2006 amendments to regulations permitting consumer interest interveners to obtain compensation for participation in the administrative ratesetting process when an order or decision is issued by the Commissioner on an insurer's ratesetting application *without a formal rate hearing*, where, for example, the matter was resolved by a settlement among the parties.

Plaintiffs, the Association of California Insurance Companies, the Personal Insurance Federation of California, the American Insurance Association, and the Pacific Association of Domestic Insurance Companies (Insurance Companies), filed a petition for a peremptory writ of mandate and complaint for declaratory and injunctive relief, claiming that because the amended regulations permit an award of compensation without a formal rate hearing, the regulations conflict with Insurance Code sections 1861.05 and 1861.10. (Unspecified statutory references are to the Insurance Code.) The trial court rendered a judgment upholding the validity of the regulations and denying the Insurance Companies' petition and requests for declaratory and injunctive relief. The trial court also issued an order awarding compensation to intervener, The Foundation for Taxpayer and Consumer Rights (FTCR).

Insurance Companies appealed from the judgment and the order awarding compensation.

As explained below, we affirm the judgment because the regulations are consistent with the governing statutes and reasonably necessary to effectuate the purposes of those statutes. We also affirm the trial court's award of compensation to FTCR because the trial court was authorized to award such compensation under section 1861.10, subdivision (b).

# I

## BACKGROUND

### A. *Statutory and Regulatory Framework*

"In 1988, voters passed Proposition 103, which made 'numerous fundamental changes in the regulation of automobile and other types of insurance.' (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 812 [258 Cal.Rptr. 161, 771 P.2d 1247] . . . .) 'Formerly, the so-called "open competition" system of regulation had obtained, under which "rates [were] set by insurers without prior or subsequent approval by the Insurance Commissioner . . . ." ' (*20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 240 [32 Cal.Rptr.2d 807, 878 P.2d 566] . . . .) Proposition 103 altered this system by adding to the Insurance Code article 10—'entitled "Reduction and Control of Insurance Rates." ([Ins. Code,] §§ 1861.01–1861.14.)' [Citation.]" (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1035 [12 Cal.Rptr.3d 343, 88 P.3d 71] (*State Farm*).) Article 10 (now comprised of §§ 1861.01–1861.16) was added to division 1, part 2, chapter 9 of the Insurance Code (chapter 9). Chapter 9 is now comprised of sections 1850.4 through 1861.16 of the Insurance Code. "This new article required, among other things, approval by the . . . Commissioner . . . for all insurance rate increases [citation], and 'provide[d] for consumer participation in the administrative ratesetting process' (*Walker v. Allstate Indemnity Co.* (2000) 77 Cal.App.4th 750, 753 [92 Cal.Rptr.2d 132])." (*State Farm, supra*, 32 Cal.4th at p. 1035, fn. omitted.)

Before Proposition 103, ratemaking and rate regulation for various classes of insurance were governed by the McBride-Grunsky Insurance Regulatory Act of 1947 as amended (McBride Act), set forth in chapter 9. (*Economic Empowerment Foundation v. Quackenbush* (1997) 57 Cal.App.4th 677, 680 [67 Cal.Rptr.2d 323] (*Economic Empowerment Foundation*).) "An administrative procedure to enforce the laws regulating insurance rates predated Proposition 103 and still exists. Section 1858, subdivision (a) states that any

person aggrieved by a rate charged, rating plan, rating system, or underwriting rule may file a complaint with the Commissioner and request a public hearing. The Commissioner must review and investigate the matter and may conduct a public hearing. (§§ 1858, subd. (c), 1858.01, subds. (a) & (b), 1858.1, 1858.2.) If the Commissioner finds that a violation has occurred, the Commissioner must issue an order prohibiting the misconduct and may order other corrective action. (§ 1858.3.) Any finding or determination by the Commissioner under chapter 9 is subject to judicial review under the independent judgment standard, including a decision not to conduct a hearing. (§§ 1858.6, 1861.09.) Any failure to comply with a final order by the Commissioner gives rise to a monetary penalty, and the Commissioner may bring an action in the superior court to enforce collection. (§ 1859.1.) The [foregoing] provisions . . . all predated Proposition 103." (*Farmers Ins. Exchange v. Superior Court* (2006) 137 Cal.App.4th 842, 853 [40 Cal.Rptr.3d 653] (*Farmers Ins.*).)

The laws regulating insurance rates before Proposition 103 "were widely viewed as ineffective" and public dissatisfaction with such laws was the "primary impetus for Proposition 103." (*Farmers Ins., supra*, 137 Cal.App.4th at p. 852.) "The stated purpose of [Proposition 103] was 'to protect consumers from arbitrary insurance rates and practices, to encourage a competitive insurance marketplace, to provide for an accountable Insurance Commissioner, and to ensure that insurance is fair, available, and affordable for all Californians.' (Stats. 1988, p. A-276, § 2.)" (*Id.* at p. 851.)

Accordingly, the uncodified findings and declaration of Proposition 103 stated that " 'insurance reform is necessary. First, property-casualty insurance rates shall be immediately rolled back to what they were on November 8, 1987 . . . . Second, automobile insurance rates shall be determined primarily by a driver's safety record and mileage driven. Third, insurance rates shall be maintained at fair levels by requiring insurers to justify all future increases. . . . Insurance companies shall pay a fee to cover the costs of administering these new laws so that this reform will cost taxpayers nothing.' (Stats. 1988, p. A-276, § 1.)" (*Farmers Ins., supra*, 137 Cal.App.4th at pp. 852–853.)

Under Proposition 103, an insurer "which desires to change any rate shall file a complete rate application with the commissioner. . . . The applicant shall have the burden of proving that the requested rate change is justified and meets the requirements of this article [article 10 of chapter 9]." (§ 1861.05, subd. (b).) Thus, after November 8, 1989, "Proposition 103 institutes a permanent regulatory regime comprising the 'prior approval'

system, under which, in the words of Insurance Code section 1861.05, subdivision (a), the Insurance Commissioner must approve a rate applied for by an insurer before its use . . . ." (*20th Century Ins. Co. v. Garamendi, supra*, 8 Cal.4th at p. 243 (*20th Century*).) The Commissioner must notify the public of the insurer's application for a rate change. (§ 1861.05, subd. (c).) The application is deemed to be approved 60 days after public notice unless "(1) a consumer or his or her representative requests a hearing within forty-five days of public notice and the commissioner grants the hearing, or determines not to grant the hearing and issues written findings in support of that decision, or (2) the commissioner on his or her own motion determines to hold a hearing, or (3) the proposed rate adjustment exceeds 7% of the then applicable rate for personal lines or 15% for commercial lines, in which case the commissioner must hold a hearing upon a timely request." (§ 1861.05, subd. (c).)[1]

The provisions of the Insurance Code enacted by Proposition 103 and which are key to this appeal are subdivisions (a) and (b) of section 1861.10, which provide: "(a) Any person may initiate or intervene in any proceeding permitted or established pursuant to this chapter [chapter 9], challenge any action of the commissioner under this article [article 10], and enforce any provision of this article. [¶] (b) The commissioner or a court shall award reasonable advocacy and witness fees and expenses to any person who demonstrates that (1) the person represents the interests of consumers, and, (2) that he or she has made a substantial contribution to the adoption of any order, regulation or decision by the commissioner or a court. Where such advocacy occurs in response to a rate application, the award shall be paid by the applicant."

---

[1] Section 1861.05 provides in pertinent part: "(a) No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter. . . . [¶] (b) Every insurer which desires to change any rate shall file a complete rate application with the commissioner. . . . The applicant shall have the burden of proving that the requested rate change is justified and meets the requirements of this article. [¶] (c) The commissioner shall notify the public of any application by an insurer for a rate change. The application shall be deemed approved sixty days after public notice unless (1) a consumer or his or her representative requests a hearing within forty-five days of public notice and the commissioner grants the hearing, or determines not to grant the hearing and issues written findings in support of that decision, or (2) the commissioner on his or her own motion determines to hold a hearing, or (3) the proposed rate adjustment exceeds 7% of the then applicable rate for personal lines or 15% for commercial lines, in which case the commissioner must hold a hearing upon a timely request. In any event, a rate change application shall be deemed approved 180 days after the rate application is received by the commissioner (A) unless that application has been disapproved by a final order of the commissioner subsequent to a hearing, or (B) extraordinary circumstances exist. . . ."

Subdivision (d) of section 1861.05 addresses the issue of extraordinary circumstances. It is not pertinent to this appeal, so we do not set out its provisions.

██ As noted by the court in *Calfarm Ins. Co. v. Deukmejian, supra,* 48 Cal.3d 805 (*Calfarm*), Proposition 103 "does not establish a detailed method of processing and deciding rate applications. It contains a few provisions relating to public notice and participation (i.e., §§ 1861.05, subd. (c), 1861.06, 1861.07 & 1861.10),[2] but hearings are generally held in accordance with provisions of the Administrative Procedure Act. (See § 1861.08, which provides generally that '[h]earings shall be conducted pursuant to Sections 11500 through 11528 of the Government Code.') Much is necessarily left to the Insurance Commissioner, who has broad discretion to adopt rules and regulations as necessary to promote the public welfare. [Citations.]" (*Calfarm,* at p. 824; see also *20th Century, supra,* 8 Cal.4th at p. 280 [Prop. 103 impliedly authorizes Commissioner to formulate regulations adopted in quasi-legislative proceedings].)

## B. *The 1995 Regulations*

To implement sections 1861.05 and 1861.10, the Department of Insurance (Department) promulgated regulations in 1995, in subchapter 4.9 of chapter 5 of title 10 of the California Code of Regulations. The regulations set up procedures for persons to intervene or participate in proceedings on rate applications and other proceedings subject to chapter 9. (Cal. Code Regs., tit. 10, former §§ 2661.2, 2661.3 & 2661.4.) (If a 1995 regulation in title 10 of the California Code of Regulations was later amended, the 1995 version of the regulation is referred to as a "former regulation." The current version of a regulation is referred to as "regulation.")

A person wishing to intervene and become a party to a rate hearing was required to file a petition to intervene; if the petitioner intended to seek compensation in the proceeding, the petition was required to contain an itemized estimated budget for the participation. (Former reg. 2661.3, subds. (a), (c).) "Interveners wishing to recover fees must first file a request for a finding of eligibility to seek compensation, which establishes that the intervener represents the interests of consumers. (Cal. Code Regs., tit. 10, [former regs.] 2662.2, 2662.3, subd. (a).) Those found eligible to seek compensation must then file a request for an award of compensation, which details the intervener's services and expenditures, and describes the intervener's 'substantial contribution' to the proceeding. (Cal. Code Regs., tit. 10, [former reg.] 2662.2, subd. (a).)" (*Economic Empowerment Foundation,*

---

[2] Section 1861.06 provides, "Public notice required by this article shall be made through distribution to the news media and to any member of the public who requests placement on a mailing list for that purpose." Section 1861.07 provides, "All information provided to the commissioner pursuant to this article shall be available for public inspection, and the provisions of Section 6254(d) of the Government Code and Section 1857.9 of the Insurance Code shall not apply thereto."

*supra*, 57 Cal.App.4th at p. 681.) "Compensation may be reduced to the extent that the intervener's substantial contribution 'duplicates' that of another party to the proceeding. (Cal. Code Regs., tit. 10, [former reg.] 2662.5, subd. (b).)" (*Id.* at p. 681.)

Regulation 2661.1, subdivision (b) defines "compensation" as "payment for all or part of advocacy fees, witness fees, and other expenses of participation and intervention in any rate hearing or proceeding other than a rate hearing." Former regulation 2662.1 stated that "[t]he purpose of this Article [article 14, titled 'Intervenor's and Participant's Fees and Expenses'] is to establish procedures for awarding advocacy fees, witness fees and other expenses to intervenors and participants in proceedings, including proceedings other than rate hearings, before the Insurance Commissioner in accordance with Section 1861.10(b) of the Insurance Code."

Former regulation 2651.1, subdivision (h) defined "proceeding" as "any action conducted pursuant to Article 10 of Chapter 9 of Part 2 of Division 1 of the California Insurance Code, entitled 'Reduction and Control of Insurance Rates.' " Former regulation 2661.1, subdivision (e) provided, " 'Proceeding' . . . includes those proceedings set forth in Insurance Code Section 1861.10(a)." A "proceeding other than a rate hearing" was defined in former regulation 2661.1, subdivision (f) as "any proceeding, including those described in subdivision (e) above, conducted pursuant to Chapter 9 of Part 2 of Division 1 of the Insurance Code which is not a rate hearing as defined in this section." A "[r]ate hearing" included "any proceeding conducted pursuant to Insurance Code section . . . 1861.05." (Former reg. 2661.1, subd. (h).)

## C. *The 2006 Regulations*

In September 2006, the Commissioner issued a Notice of Proposed Action and Notice of Public Hearing to amend the regulations "governing the prior approval process, including regulations governing consumer participation. The proposed regulations will modify those regulations contained in Subchapter 4.9 (Rules of Practice and Procedure for Rate Proceedings) in order to clarify that consumers who participate in the approval process after having filed a petition for a hearing may seek an award of reasonable advocacy fees. [¶] For example, [former regulations] 2651.1 and 2661.1 contain definitions. The Department proposes to amend these definitions to clarify that a 'proceeding' is established upon submission of a petition for a hearing by a consumer. . . . [¶] . . . In addition, the Department proposes to amend [regulation] 2662.3(a)(3) to expand the list of the types of documents that a consumer may use to prove that it has made a substantial contribution to the

adoption of any order, regulation, or decision by the Commissioner." (Cal. Reg. Notice Register 2006, No. 38-Z, p. 1374.)

Regulation 2662.3, subdivision (b)(3) permits an intervener or participant to show a substantial contribution with documents including but not limited to "stipulations or settlement agreements regarding the outcome or material issues in the proceeding, and decision or order by the Department or Commissioner concerning a petition for hearing or rate or class plan application issued without a formal hearing."

A more detailed initial statement of reasons stated that the Commissioner "proposes to adopt and amend regulations to change the definitions related to 'proceedings' and to establish an application withdrawal procedure following the filing of a petition for a hearing, so as to ensure that consumer representatives are eligible to seek compensation when they make a substantial contribution to any 'order, regulation, or decision by the commissioner' prior to a formal hearing being granted or denied. The balance of the proposed amendments conform various provisions of existing regulations regarding compensation to intervenors in such proceedings to those changes." (Cal. Dept. of Ins., file No. RH06092874, Initial Statement of Reasons (Sept. 22, 2006) p. 4.)

The initial statement of reasons explained the necessity for the amendments: "It has been the Department's practice to encourage consumer representatives and applicants to resolve rate challenges informally so as to avoid engaging in lengthy formal hearings that benefit no one. Often during negotiations, insurers seek to withdraw their rate applications. In some instances, applicants have withdrawn their applications after a petition for a hearing has been filed and after the petitioner has expended substantial time and effort advocating its position through its advocates and experts. In these instances, the result of the informal process has been either no rate change, or a substantial alteration in the rate ultimately approved by the Commissioner. Such results benefit the public without the necessity of conducting a formal hearing. [¶] In several of these instances, either the challenge was settled by the parties or the case was dismissed as moot when the applicant chose to withdraw rather than proceed with its application and potentially be subject to a hearing. After extensive and careful consideration, the Commissioner determined that the petitioner made a 'substantial contribution' to his decision concerning the rate applications even though no hearing was held. Recently, several insurers have objected to the Commissioner's authority to award compensation to petitioners who make a substantial contribution in these circumstances. . . . [¶] . . . [¶] [A] superior court recently ruled that the Commissioner was not authorized to award a petitioner a fee award. . . . [T]he Commissioner believes that the intervenor regulations should be

amended to reflect the fact that once a petition for hearing has been filed, a proceeding has been established and that an insurer may not withdraw its rate application without approval of the Commissioner. Consumer representatives who make a substantial contribution to the outcome of that proceeding are entitled to compensation for their work, even if the proceeding concludes without a hearing." (Cal. Dept. of Ins., file No. RH06092874, Initial Statement of Reasons, *supra*, p. 2.)

The superior court decision to which the Commissioner referred was an October 2005 ruling in *American Healthcare Indemnity Company v. Garamendi* (Super. Ct. L.A. County, 2005, No. BS094515) (*American Healthcare*). In *American Healthcare*, the trial court granted the insurers' petition for a writ of mandate seeking to vacate the Commissioner's award of compensation to FTCR. There, FTCR had filed petitions for a hearing and for intervention but the insurers withdrew their rate applications before any hearing on their applications, and no hearing was granted. The trial court determined that because FTCR's petition to intervene was not granted, FTCR was not a party to the proceeding and "there was no, and could not be, a substantial contribution made by [FTCR]," and the Commissioner therefore abused his discretion in awarding compensation to FTCR.

It was the Commissioner's view that section 1861.10, subdivision (b) "plainly mandates that 'any person' who 'represents the interests of consumers' and who 'made a substantial contribution to the adoption of any order, regulation, or decision by the commissioner' is entitled to an award of compensation for reasonable advocacy fees and expenses. An insurer's attempt to withdraw its application in order to avoid paying compensation defeats the purpose of the statutes. . . . [¶] . . . [¶] In summary, the Commissioner believes that, as the voters intended, the scrutiny of consumer representatives is an important tool to ensure that applicants comply with the statutory and regulatory prohibition on 'excessive, inadequate, and unfairly discriminatory' rates, or rates that otherwise violate the law, and that if consumer representatives are denied the ability to seek compensation when they make a substantial contribution in pre-hearing proceedings, such scrutiny would be discouraged and curtailed. [¶] Such a result contravenes the public policy underlying section 1861.10 and analogous intervenor compensation statutes of encouraging consumer participation in administrative and court proceedings, and thereby aiding regulators and courts in their decisions. [Citations.]" (Cal. Dept. of Ins., file No. RH06092874, Initial Statement of Reasons, *supra*, p. 3.)

Both Insurance Companies and FTCR submitted written comments concerning the proposed amendments to the regulations. On November 3, 2006,

FTCR petitioned the Commissioner to participate in the rulemaking proceeding for the purpose of representing the interests of consumers. FTCR's estimated advocacy fees and expenses of participation in the rulemaking proceeding were $36,025. On December 4, 2006, the Commissioner granted FTCR's petition and found that FTCR was eligible to seek compensation in Department proceedings for a term of two years, beginning July 14, 2006.

On November 6, 2006, the Department held a public hearing on the proposed amendments to the regulations regarding compensation to interveners. A representative of Insurance Companies spoke in opposition to the proposed amendments, and a representative of FTCR spoke in favor of them.

On November 13, 2006, the Commissioner submitted the amendments and the record of the rulemaking proceeding to the Office of Administrative Law, which approved the amendments and filed them with the Secretary of State. The amendments became effective on January 28, 2007. The Commissioner originally submitted the adoption of a new regulation (proposed regulation 2653.6) to the Office of Administrative Law that would have precluded an insurer from withdrawing a rate or class plan application after a petition for hearing had been filed unless the Commissioner approved of the withdrawal of the application. Before January 12, 2007, the Commissioner withdrew this proposed regulation and it never became effective. (Cal. Reg. Notice Register 2007, No. 2-Z, p. 48.)

Regulation 2651.1, subdivision (h) defines "proceeding" to mean "any action conducted pursuant to Article 10 of Chapter 9 of Part 2 of Division 1 of the California Insurance Code, entitled 'Reduction and Control of Insurance Rates,' including a rate proceeding established upon the submission of a petition for hearing pursuant to California Insurance Code section 1861.05 and section 2653.1 of this subchapter."

A "rate proceeding" is defined as "any proceeding conducted pursuant to Insurance Code Sections 1861.01 and 1861.05. For purposes of section 1861.05, a 'rate proceeding' is established upon the submission of a petition for hearing in accordance with section 2653.1 of this subchapter, or if no petition for hearing is filed, upon notice of hearing." (Reg. 2661.1, subd. (h).)

A "rate hearing" is defined as "a hearing noticed by the Commissioner on his own motion or in response to a petition for hearing pursuant to Insurance Code section 1861.05, which is conducted pursuant to the applicable procedural requirements of Insurance Code section 1861.08, and subchapters 4.8 and 4.9 of this chapter." (Reg. 2661.1, subd. (i).)

" 'Substantial Contribution' means that the intervenor substantially contributed, as a whole, to a decision, order, regulation, or other action of the Commissioner by presenting relevant issues, evidence, or arguments which were separate and distinct from those emphasized by the Department of Insurance staff or any other party, such that the intervenor's participation resulted in more relevant, credible, and non-frivolous information being available for the Commissioner to make his or her decision than would have been available to a Commissioner had the intervenor not participated. A substantial contribution may be demonstrated without regard to whether a petition for hearing is granted or denied." (Reg. 2661.1, subd. (k).)

Subdivisions (a) and (e) of regulation 2661.3 were amended to permit a person who petitions for a hearing to combine in one pleading a petition to intervene with a petition for a hearing. Regulation 2661.3, subdivision (g) deals with the requirements for granting a petition to intervene and a petition for a hearing.

Regulation 2662.1 sets out the purpose of title 10, chapter 5, subchapter 4.9, article 14 (regs. 2662.1–2662.8), to wit: "to establish procedures for awarding advocacy fees, witness fees and other expenses to petitioners, intervenors and participants in proceedings, including proceedings other than rate proceedings, before the Insurance Commissioner in accordance with Section 1861.10(b) of the Insurance Code."

Regulation 2662.3, subdivision (a) was amended to add "petitioner" to the list of those entitled to request an award of compensation (the others being interveners and participants). Regulation 2662.3, subdivision (b)(3) and regulation 2662.5, subdivision (a)(1) expanded the evidence that can be used to establish a substantial contribution.

D. *Trial Court Proceeding*

In May 2007, Insurance Companies filed a verified petition for a peremptory writ of mandate and a complaint for declaratory and injunctive relief, seeking to invalidate regulations 2651.1, subdivision (h), 2661.1, subdivisions (h), (i), (k), 2661.3, subdivisions (a), (e), (g), 2662.1, 2662.3, subdivisions (a), (b)(3), and 2662.5, subdivision (a)(1). Insurance Companies maintained that the foregoing regulations were inconsistent with sections 1861.10 and 1861.05 in that the statutes permitted compensation awards to interveners only for participation in a formal "rate hearing" and not for participation in any other part of the administrative ratesetting process.

Commissioner Steve Poizner and the Department filed opposition to the petition for a peremptory writ and complaint. FTCR was permitted to intervene in the action and filed a complaint in intervention and opposition to the petition and complaint. All parties also filed requests for judicial notice. After a hearing, the trial court rejected Insurance Companies' petition and complaint, concluding that Insurance Companies "failed to demonstrate that the Amended Regulations are inconsistent and in conflict with section 1861.10, and not reasonably necessary to effectuate the purpose thereof." Insurance Companies appealed from the judgment.

FTCR filed a motion for an award of compensation for reasonable attorney fees and expenses incurred in the superior court action, pursuant to section 1861.10, subdivision (b). Insurance Companies opposed the motion on several grounds, arguing, among other things, that such fees were not permitted under section 1861.10 because the action was not one "permitted or established" under chapter 9 and all of the work done by FTCR was duplicative of the work by Poizner and the Department. After a hearing, the court awarded FTCR $121,848.16 pursuant to section 1861.10, subdivision (b). Insurance Companies appealed from the order.

## II

## DISCUSSION

### A. *Governing Law and Standard of Review*

"Government Code section 11342.2 provides the general standard of review for determining the validity of administrative regulations. That section states that '[w]henever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless [1] consistent and not in conflict with the statute and [2] reasonably necessary to effectuate the purpose of the statute.' " (*Communities for a Better Environment v. California Resources Agency* (2002) 103 Cal.App.4th 98, 108 [126 Cal.Rptr.2d 441], fn. omitted (*Communities*).)

Insurance Companies do *not* challenge the trial court's finding that they "failed to demonstrate that the Amended Regulations are . . . not reasonably necessary to effectuate the purpose [of Proposition 103]." Accordingly, on this appeal we need not address the reasonable necessity requirement, but only the consistency requirement of the standard set out in Government Code section 11342.2.

■ The standard of consistency in Government Code section 11342.2 means "being in harmony with, and not in conflict with or contradictory to, existing statutes, court decisions, or other provisions of law." (Gov. Code, § 11349, subd. (d).)

■ With respect to the consistency requirement, "the judiciary independently reviews the administrative regulation for consistency with controlling law. The question is whether the regulation alters or amends the governing statute or case law, or enlarges or impairs its scope. In short, the question is whether the regulation is within the scope of the authority conferred; if it is not, it is void. This is a question particularly suited for the judiciary as the final arbiter of the law, and does not invade the technical expertise of the agency." (*Communities, supra,* 103 Cal.App.4th at pp. 108–109, fns. omitted.) "By contrast, the second prong of this standard, reasonable necessity, generally does implicate the agency's expertise . . . ." (*Id.* at p. 109; see *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (*Yamaha*).)

Proposition 103, in section 1861.09, requires that "[j]udicial review shall be in accordance with Section 1858.6." Section 1858.6 states in pertinent part: "Any finding, determination, rule, ruling or order made by the commissioner under this chapter shall be subject to review by the courts of the State and proceedings on review shall be in accordance with the provisions of the Code of Civil Procedure. In such proceedings on review, the court is authorized and directed to exercise its independent judgment on the evidence and unless the weight of the evidence supports the findings, determination, rule, ruling or order of the commissioner, the same shall be annulled."

■ "The independent judgment standard requires the trial court to accord a strong presumption of correctness to the Commissioner's findings, and the burden of proof rests on the party challenging those findings, but ultimately the trial court is free to reweigh the evidence and substitute its own findings. [Citation.] On appeal, we apply the substantial evidence test to the trial court's factual findings, but review legal determinations independently." (*State Farm Mutual Automobile Ins. Co. v. Quackenbush* (1999) 77 Cal.App.4th 65, 71 [91 Cal.Rptr.2d 381].)

■ "In deciding whether the regulation conflicts with its legislative mandate, the court does not defer to the agency's interpretation of the law under which the regulation issued, but rather exercises its own independent judgment. (See *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 110[5], fn. 7 [56 Cal.Rptr.3d 880, 155 P.3d 284] ['[w]hile the [agen-

cy's] construction of a statute is entitled to consideration and respect, it is not binding and it is ultimately for the judiciary to interpret this statute']; *Yamaha*, [*supra*, 19 Cal.4th] at p. 11, fn. 4 ['[t]he court, not the agency, has "final responsibility for the interpretation of the law" under which the regulation was issued']; see also *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 11 [270 Cal.Rptr. 796, 793 P.2d 2] [' "[a]dministrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations" '].)" (*Aguiar v. Superior Court* (2009) 170 Cal.App.4th 313, 323 [87 Cal.Rptr.3d 813].) "Courts must, in short, independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation. Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth." (*Yamaha, supra*, 19 Cal.4th at pp. 7–8.)

■ "The general principles that govern interpretation of a statute enacted by the Legislature apply also to an initiative measure enacted by the voters. [Citation.] Thus, our primary task here is to ascertain the intent of the electorate [citation] so as to effectuate that intent [citation]." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 978–979 [95 Cal.Rptr.3d 588, 209 P.3d 923].) "Usually, there is no need to construe a provision's words when they are clear and unambiguous and thus not reasonably susceptible of more than one meaning." (*Id.* at p. 979.)

■ We " 'must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.' [Citation.] At the same time, 'we do not consider . . . statutory language in isolation.' [Citation.] Instead, we 'examine the entire substance of the statute in order to determine the scope and purpose of the provision, construing its words in context and harmonizing its various parts.' [Citation.] Moreover, we ' "read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " ' [Citation.]" (*State Farm, supra*, 32 Cal.4th at p. 1043.)

### B. *Analysis of Consistency Requirement*

Insurance Companies contend that the 2006 amendments to the intervener regulations are invalid because the amendments conflict with and enlarge the scope of sections 1861.05 and 1861.10. Insurance Companies maintain that

the foregoing statutes allow consumers to obtain compensation in connection with *public hearings* on rate applications, and not in connection with other parts of the administrative ratesetting process where no public rate hearing is ordered by the Commissioner. Insurance Companies' reasoning can be summarized as follows: An informal "prehearing" proceeding involving a rate application is not a proceeding "permitted or established" pursuant to chapter 9 of part 2 of division 1 of the Insurance Code (that is, §§ 1850.4–1861.16), and there is no right to intervene in that "prehearing" proceeding and thus no right to compensation.

The logical corollary of Insurance Companies' argument, as acknowledged in their opening brief, is the assertion that Proposition 103 does not afford or contemplate consumer participation in *every aspect* of the administrative ratesetting process, but only in the *public rate hearing*.

■ As explained below, we conclude that the amended regulations allow compensation for participation in the ratesetting process beginning with the submission of a petition for a hearing or the Commissioner's notice of a rate hearing, even if there is no public rate hearing. We further determine that the amended regulations are consistent with Proposition 103 and valid.

■ The only provision in Proposition 103 addressing the issue of compensation ("advocacy and witness fees and expenses") is in subdivision (b) of section 1861.10. (See, *ante*, at p. 1037.) Subdivision (b) sets out two requirements for an award of compensation: (1) representation of consumer interests and (2) substantial contribution to the adoption of an order, regulation, or decision by the Commissioner or a court. Subdivision (a) of section 1861.10 deals with entirely different issues, including the initiation of, or intervention in, certain proceedings. The structure and language of section 1861.10 indicates that the issues of intervention in subdivision (a) and compensation in subdivision (b) are separate and independent. Accordingly, the only *statutory requirements* for compensation are set out in subdivision (b) of section 1861.10. (The regulations, however, limit compensation to "petitioners, intervenors and participants in proceedings . . . ." (Reg. 2662.1; see also regs. 2662.3, subd. (a), 2662.5.).) Subdivision (b) does not expressly or by implication require that the order, regulation, or decision of the Commissioner be adopted only after a public hearing, or only after any specific procedure.

■ "An administrative agency is not limited to the exact provisions of a statute in adopting regulations to enforce its mandate. '[T]he absence of any specific [statutory] provisions regarding the regulation of [an issue] does not mean that such a regulation exceeds statutory authority . . . .' [Citations.]" (*Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 362 [185 Cal.Rptr. 453, 650 P.2d 328].) The agency is authorized to " ' " 'fill

up the details' " ' " of the statutory scheme. (*Mineral Associations Coalition v. State Mining & Geology Bd.* (2006) 138 Cal.App.4th 574, 589 [41 Cal.Rptr.3d 544].) The absence of any specific provisions regarding the proceedings in which compensation is authorized does not mean that regulations as to such issues exceed statutory authority, but only that the electorate did not itself choose to determine the issue and instead deferred to and relied upon the expertise of the Commissioner and the Department. (See *Credit Ins. Gen. Agents Assn. v. Payne* (1976) 16 Cal.3d 651, 656 [128 Cal.Rptr. 881, 547 P.2d 993] (*Credit Ins.*) ["Courts have long recognized that the Legislature may elect to defer to and rely upon the expertise of administrative agencies . . . ."].)

According to Insurance Companies, the amended regulations exceed statutory authority because consideration of section 1861.10, subdivision (b) in conjunction with other provisions of Proposition 103 and chapter 9 reveals that the statutes limit compensation only to rate hearings. We disagree.

The first two provisions of Proposition 103 that Insurance Companies attempt to read together are subdivisions (a) and (b) of section 1861.10. Insurance Companies maintain that subdivision (a) of section 1861.10 limits and qualifies subdivision (b) so as to permit compensation only in conjunction with a *rate hearing* because only a rate hearing is a "proceeding permitted or established pursuant to [chapter 9]" within the meaning of subdivision (a).

As stated, we disagree with the assertion that subdivision (a) limits or qualifies the two requirements for compensation set out in subdivision (b) of section 1861.10. But assuming for purposes of argument that subdivision (a) adds a third statutory requirement for an award of compensation—that is, that compensation must be for initiation of or intervention in any proceeding permitted or established pursuant to chapter 9—we conclude that a "rate proceeding" is a proceeding permitted by chapter 9.

Proposition 103 specifically refers to only several parts of the administrative rate review process: Section 1861.05, subdivision (b) provides that an insurer that desires to change any rate shall file a rate application with the Commissioner; section 1861.05, subdivision (c) addresses the issue of when an application is deemed to be approved and refers to rate change application hearings; section 1861.08 deals with the law governing hearings, the Commissioner's adoption of a decision, and discovery; section 1861.09 addresses the issue of judicial review; and section 1861.10, subdivision (a) refers to consumer intervention. The foregoing procedures can be considered as "established" by Proposition 103.

But not all details of the administrative rate review process are "established" by the statutes. As noted in *Calfarm, supra,* 48 Cal.3d at page 824,

Proposition 103 does not provide a detailed method of processing and deciding rate change applications. Many procedures and details were necessarily left to regulations and rules to be promulgated by the Commissioner. In point, subdivision (a) of section 1861.10 refers broadly to "any proceeding *permitted* or established pursuant to [chapter 9]." (Italics added.)

 Proposition 103 contemplates or permits public participation and intervention in the rate review process. Proceedings arising out of an insurer's rate change application, and which entail public participation and intervention in the rate review process, are procedures "permitted" and "established" by chapter 9. The "rate proceeding" commences with the submission of a petition for a hearing or with a notice of a hearing. (Reg. 2661.1, subd. (h).) The "rate proceeding" thus constitutes a proceeding "permitted" pursuant to chapter 9 and falls within the ambit of section 1861.10, subdivision (a). Consequently, the amended regulations pertaining to rate proceedings are consistent with the latter statutory provision.

Citing language in *Farmers Ins., supra*, 137 Cal.App.4th 842, Insurance Companies maintain that the only proceeding to review an application for a rate increase "permitted" by chapter 9 is the public rate hearing because only a *rate hearing* (and not a *"rate proceeding"*) is specifically addressed in chapter 9 (in §§ 1861.05 and 1861.08). *Farmers Ins.* provides no support for Insurance Companies. *Farmers Ins.* held that section 1861.10, subdivision (a) did not create a private right of action for insureds wishing to sue insurers for violation of the good driver discount provisions of section 1861.02. (*Farmers Ins., supra*, 137 Cal.App.4th at p. 847.) *Farmers Ins.* did not deal with any issues pertaining to the regulations or compensation under subdivision (b) of section 1861.10.

Without citation to any authority, Insurance Companies characterize a "rate proceeding" as not an administrative proceeding, but "simply a label for the Commissioner's internal nonpublic review of a rate application before any hearing has been ordered." Contrary to Insurance Companies' claim, the rate proceeding as defined in regulation 2661.1, subdivision (h) commences with the submission of a petition for hearing or with a notice of hearing. The petition and notice are pleadings (reg. 2651.1, subd. (g)) and part of the public record (reg. 2652.9). Although regulation 2661.1, subdivision (h) specifies the beginning but not the end of the rate proceeding, the regulatory scheme contemplates that the rate proceeding culminates in an order or decision by the Commissioner on the insurer's rate application. The rate proceeding is thus part of the public ratesetting process.

 Also part of the ratesetting process is the "rate hearing." (Reg. 2661.1, subd. (i).) A rate hearing may in some cases constitute a part of the "rate

proceeding," but a rate hearing is not necessary in all instances for the adoption of an order or decision by the Commissioner. For example, regulations *not challenged by Insurance Companies* specifically address the issue of stipulations and settlements. An administrative law judge may accept a stipulation or settlement if the agreement is in the public interest and is "fair, adequate, and reasonable." (Reg. 2656.2, subd. (a).) Regulation 2656.1, subdivision (a) provides: "Parties may stipulate to the resolution of an issue of fact or the applicability of a provision of law material to a proceeding, or may agree to settlement on a mutually acceptable outcome to a proceeding, with or without resolving material issues." Stipulations and settlements must be filed with the administrative law judge for proposed acceptance or rejection. "When a stipulation or settlement is filed with the administrative law judge, it shall also be served on all parties. If a stipulation dispositive of the case or a settlement is proposed prior to the taking of any testimony, the parties supporting the stipulation or settlement shall file and serve supporting declarations indicating the reasons that the settlement or stipulation is fundamentally fair, adequate, reasonable and in the interests of justice." (Reg. 2656.1, subd. (c).)

 The administrative law judge must reject a proposed stipulation or settlement whenever "the stipulation or settlement is not in the public interest and is not, taken as a whole, fundamentally fair, adequate, and reasonable." (Reg. 2656.2, subd. (a).) "The terms of a stipulation or settlement adopted by the administrative law judge shall be included in any proposed decision provided to the Commissioner." (Reg. 2656.3, subd. (b).)

The regulations thus permit the Commissioner to adopt an order or decision on a rate change application based on an approved settlement and without holding a formal rate hearing. Accordingly, an intervener in such a proceeding is entitled to seek compensation under the amended regulations. The amended regulations fill in the details not specifically addressed by Proposition 103 but nevertheless fall within the scope of statutory authority.

Other provisions which Insurance Companies claim support their proposition that awards of compensation are limited to expenses incurred in rate hearings are sections 1861.05, subdivision (c) (see, *ante*, fn. 1) and 1861.08.[3]

---

[3] Section 1861.08 provides in pertinent part: "Hearings shall be conducted pursuant to Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code, except that: [¶] (a) Hearings shall be conducted by administrative law judges . . . . [¶] (b) Hearings are commenced by a filing of a notice in lieu of Sections 11503 and 11504. [¶] (c) The commissioner shall adopt, amend, or reject a decision only under Section 11518.5 and subdivisions (b), (c), and (e) of Section 11517 and solely on the basis of the record as provided in Section 11425.50 of the Government Code. [¶] . . . [¶] (e) Discovery shall be liberally construed and disputes determined by the administrative law judge as provided in Section 11507.7 of the Government Code."

Their argument is as follows: Section 1861.05, subdivision (c) permits a rate application to be "deemed approved" under certain circumstances unless (1) a consumer requests and is granted a hearing, (2) the Commissioner determines to hold a hearing, or (3) the proposed rate adjustment exceeds specified amounts, in which case the Commissioner must hold a hearing upon timely request. Insurance Companies reason the foregoing language indicates that the *only* way to *disapprove* a rate application is by way of a public rate hearing conducted pursuant to section 1861.08, which is required for the "adoption of any order, regulation or decision by the commissioner." (§ 1861.10, subd. (b).) Insurance Companies conclude that "the statutory scheme does not contemplate that the commissioner will entertain evidence or arguments against a rate application except in a *public* hearing," that "unless and until the commissioner orders a hearing, the only statutory role for a consumer in response to a rate application is to petition for a hearing," and that until the Commissioner orders a hearing on a rate application, there is no proceeding in which to intervene. If there is no proceeding in which to intervene, there is no forum in which to incur "advocacy and witness fees and expenses" under section 1861.10, subdivision (b).

The fallacy in Insurance Companies' argument is that section 1861.05, subdivision (c) sets out the circumstances under which a rate change application may be deemed to be approved without a rate hearing. It does not address the proceedings that may occur after the Commissioner determines to hold a hearing or after an intervener submits a petition to intervene or a petition for a hearing. Section 1861.05 does not address the issue of the resolution of a rate change application by way of a stipulation or settlement. And neither section 1861.05 nor 1861.08 expressly or by implication *limits* public participation to the *rate hearing* stage of the rate review process.

Subdivision (e) of section 1861.08 contemplates an intervener's participation in discovery, a prehearing stage of the rate review process. (See *ante*, fn. 3.) And Insurance Companies do not challenge regulation 2655.1, subdivision (a), which permits an intervener to request discovery concurrently with the filing of its initial pleading.[4] Accordingly, Proposition 103 and regulations not challenged by Insurance Companies expressly provide for consumer participation in other aspects of the rate review process in addition to participation in a rate hearing.

To read sections 1861.08 and 1861.05 as limiting public participation to rate hearings is contrary to the uncodified provision of Proposition 103, stating that " '[t]his act shall be liberally construed and applied in order to

---

[4] Under regulation 2651.1, subdivision (g), pleading means "any petition, notice of hearing, notice of defense, answer, motion, request, response, brief, or other formal document filed with the Administrative Hearing Bureau pursuant to this subchapter."

fully promote its underlying purposes.' (Stats. 1988, p. A-290, § 8.)" (*Farmers Ins., supra,* 137 Cal.App.4th at p. 852.) Such a construction is also contrary to the goal of fostering consumer participation in the administrative ratesetting process, one of the purposes of Proposition 103. (*State Farm, supra,* 32 Cal.4th at p. 1035.)

In a related argument, Insurance Companies assert that by allowing compensation for intervention in proceedings other than a formal public hearing pursuant to section 1861.08, the amended regulations "defeat [Proposition 103's] system of public scrutiny and oversight by establishing a new, prehearing 'proceeding' into which consumer representatives are entitled to intervene and to advance arguments—off the record and outside the public's view."

But in rate proceedings, intervention can only occur after an insurer files a rate change application, which is open to public inspection (reg. 2652.9); public notice must be given of the rate change application (reg. 2648.2, subd. (f)); a petition for hearing must be served on insurers and is available for public inspection (reg. 2653.1, subds. (c), (d)); the petition for hearing, any response, any answer, and the Commissioner's decision to grant or deny a hearing are part of the record of the proceeding (reg. 2653.5); and proposed stipulations and settlements must be served on all parties, filed with the administrative law judge, and included in the administrative law judge's proposed decision provided to the Commissioner (regs. 2656.1, subd. (c), 2656.3, subd. (b)). Given the regulatory scheme, which is "on the record" and open to public scrutiny, Insurance Companies have failed to establish the backroom scenario they imagine could occur.

Insurance Companies also contend that settlement or resolution of a rate application without a public rate hearing is not permitted by Proposition 103 because it does not expressly provide for such proceedings, in contrast to sections 1858.01 and 1858.02, provisions in chapter 9 enacted before Proposition 103. Sections 1858.01 and 1858.02 set out procedures governing complaints filed by a person aggrieved by, among other things, an insurance rate charged to that person. Section 1858.02, subdivision (a) provides: "The commissioner may seek resolution of a complaint by informal conciliation at any time and may require the complainant and insurer or rating organization to meet and confer for the purposes of resolving the matter complained of by informal conciliation. The commissioner may decline to find probable cause for a complaint and may deny a request for a public hearing if the complainant refuses to enter into informal conciliation at the commissioner's request. Likewise, the commissioner may find probable cause for a complaint and may act to hold a public hearing, whether or not a request for a public

hearing accompanied the complaint, if the insurer or rating organization refuses to enter into informal conciliation at the commissioner's request."

■ As noted, the absence of specific statutory provisions in Proposition 103 relating to the resolution of a rate application without a public hearing, as, for example, by way of a settlement, does not mean that regulations permitting such resolution exceed statutory authority, but only that the electorate deferred to and relied upon the expertise of the Commissioner as to such matters. (*Credit Ins., supra*, 16 Cal.3d at p. 656.) "Under this standard of review, even though an enabling statute authorizes only '. . . such reasonable rules and regulations as may be *necessary* . . .' [citation] a court should seek not to determine whether the challenged regulation is strictly 'necessary.' Instead it must ascertain whether the agency reasonably interpreted its power in deciding that the regulation was necessary to accomplish the purpose of the statute. Stated another way, the court's role is limited to determining whether the regulation is 'reasonably designed to aid a statutory objective.' [Citations.]" (*Id.* at p. 657.) Thus, even if another regulation would better meet the statutory objectives, a regulation is valid unless it is unreasonable in light of discernible statutory objectives. (*Id.* at p. 658.)

The burden of demonstrating the regulations' invalidity under the foregoing standard is on Insurance Companies (*Credit Ins., supra*, 16 Cal.3d at p. 657), and they have not shown that the regulations were not reasonably designed to aid a statutory objective. Accordingly, we cannot conclude that the regulations exceed statutory authority.

Based on language in *Economic Empowerment Foundation, supra*, 57 Cal.App.4th at page 689, Insurance Companies maintain that the amended regulations impermissibly allow compensation where there is no order or decision on the merits, such as when an insurer withdraws its application before a hearing. But *Economic Empowerment Foundation* did not deal with the amended regulations or with the issue of compensation when an application is withdrawn before a hearing. The case does not assist Insurance Companies' facial challenge to the amended regulations. Rather, *Economic Empowerment Foundation* addressed the issue of whether, under section 1861.10, the trial court or the Commissioner had jurisdiction to award compensation to interveners for fees and expenses incurred in representing the interests of consumers in proceedings on insurers' rate increase applications. The court held that "the Commissioner has exclusive original jurisdiction over fees in proceedings, like the rate proceeding herein, which are commenced in the Department for a determination by the Commissioner on the merits." (*Economic Empowerment Foundation, supra*, 57 Cal.App.4th at p. 690.) The court, on the other hand, "would have sole jurisdiction over fees in any case in which it renders the final order or decision. As a practical

matter, this would mean that fees must be sought in the forum in which the case or proceeding originated." (*Id.* at p. 689, fn. omitted.)

■ The petition for a peremptory writ of mandate mounted a facial challenge to the validity of the amended regulations, not a challenge to the amended regulations as applied to a specific award of compensation. Insurance Companies do not cite to any regulation which permits the award of compensation without the adoption of an order, regulation, or decision by the Commissioner or the court. Even if Insurance Companies could posit a scenario where compensation might be improper, their facial challenge would not succeed because the amended regulations can be interpreted consistently with the governing statutes. "A facial challenge is ' "the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances exists under which the [law] would be valid.*" ' [Citation.] The moving party must show that the challenged statutes or regulations ' " 'inevitably pose a present total and fatal conflict' " ' with applicable prohibitions. [Citation.]" (*T.H. v. San Diego Unified School Dist.* (2004) 122 Cal.App.4th 1267, 1281 [19 Cal.Rptr.3d 532].)

■ Based on the foregoing, we conclude that Insurance Companies have failed to establish that the amended regulations are inconsistent with the governing statutes. Thus, the trial court properly rendered a judgment denying Insurance Companies' petition for a peremptory writ of mandate.

## C. *Award of Compensation to FTCR*

Although the order awarding compensation to FTCR is silent as to whether the compensation must be paid by Insurance Companies or the Department, all parties interpret the award to be payable by Insurance Companies, as the losing parties. We also so interpret the order.

Insurance Companies maintain (1) that the award of compensation to FTCR by the trial court should be reversed because the trial court proceeding was not one "permitted or established" by chapter 9 within the meaning of section 1861.10, subdivision (a), or (2) that the award should be modified to provide that Insurance Companies are not responsible for paying it.

■ For the reasons set out above in part B, we disagree with Insurance Companies' assertion that subdivision (a) of section 1861.10 provides a limitation or qualification to the provisions of subdivision (b). Assuming for purposes of argument that an award of compensation is limited to expenses incurred in those proceedings "permitted or established" pursuant to chapter 9, judicial review of a regulation is such a proceeding. Section 1858.6 affords for judicial review of a "rule," meaning a regulation, and section 1861.09

affords for judicial review and refers to section 1858.6. Accordingly, the instant petition for a peremptory writ of mandate, seeking judicial review of the amended regulations, is a proceeding permitted and established pursuant to chapter 9.

Insurance Companies argue that because their petition for a peremptory writ of mandate "did not allege jurisdiction or seek relief under any provision of chapter 9," their trial court action was brought under provisions of the Government Code and the Code of Civil Procedure. Notwithstanding Insurance Companies' failure to cite or rely upon chapter 9, chapter 9 contains the provisions authorizing their trial court action; the Government Code and the Code of Civil Procedure set out the rules of procedure for that action.

Insurance Companies do not persuade us that even if the award stands, the Department, and not they, should pay it. Their position is not supported by the last sentence of subdivision (b) of section 1861.10, stating that "[w]here such advocacy occurs in response to a rate application, the award shall be paid by the applicant." That sentence means that where the conditions for compensation are met *in response to a rate application*, the award must be paid by the insurer. But in all other circumstances, whether the award is payable by the insurer is discretionary. A judicial review arising out of a rulemaking proceeding presents such other circumstance, so an award against the insurer is in the discretion of the trial court. Insurance Companies make no further argument that imposing liability on them for FTCR's award constituted an abuse of discretion.

■■■ Citing section 12979, Insurance Companies assert that the award should be paid by the Department because the Department can recoup administrative and operational costs from insurers through assessing filing fees against insurers.[5] But section 12979 deals only with administrative and operational costs of the Department, not awards of compensation for expenses of interveners such as FTCR. As Insurance Companies fail to provide any authority that the statute is intended to shift liability for compensation from insurers to the Department, their assertion is without merit.

Accordingly, we conclude that Insurance Companies fail to persuade us that the trial court erred in awarding FTCR compensation payable by Insurance Companies.

---

[5] Section 12979 provides: "Notwithstanding the provisions of Section 12978, the commissioner shall establish a schedule of filing fees to be paid by insurers to cover any administrative or operational costs arising from the provisions of Article 10 (commencing with Section 1861.01) of Chapter 9 of Part 2 of Division 1."

## DISPOSITION

The judgment and the order are affirmed. All respondents are entitled to their costs on appeal from appellants.

Rothschild, J., and Chaney, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 14, 2010, S180126. George, C. J., did not participate therein.